## MASSON vs. BOVET.

Where a party has been led to enter into a contract by the fraud of the other party, he may, upon discovering the fraud, rescind the contract and recover whatever he has advanced upon it, provided he does so at the earliest moment after he has knowledge of the fraud, and returns whatever he has himself received upon it.

The general rule is, that the party who would rescind a contract on the ground of fraud, for the purpose of recovering what he has advanced upon it, must restore the other party to the condition in which he stood before the contract was made; but where the party who practised the fraud has entangled and complicated the subject of the contract in such a manner as to render it impossible that he should be restored to his former condition, the party injured, upon restoring, or offering to restore what he has received, and doing whatever is in his power to undo what has been done in the execution of the contract, may rescind it and recover what he has advanced.

The defendant, being the plaintiff in a judgment and about to cause land of the judgment debtor to be sold on execution, fraudulently represented to the plaintiff that the land to be sold was free from any prior incumbrance, when in truth it was subject to older liens to more than its value, and thereby induced him to become the purchaser at the sheriff's sale for a considerable sum, and received from him in payment of his bid the note of a third person held by the plaintiff for a larger sum than the amount bid, giving back his own note for the balance; it was *held* that the plaintiff, who had immediately upon the discovery of the fraud, offered to give up the note received by him and to assign the certificate of sale, could maintain replevin in the *detinet* against the defendant for the note so transferred to the defendant by him.

ERROR to the recorder's court of the city of Buffalo. Bovet sued Masson in the court below in replevin, in the *detinet*, for a promissory note, which he claimed to be his property. Plea, *non detinet*. The defendant was summoned, but the property was not delivered on the writ of replevin. It was proved that in December, 1842, the defendant having a judgment in his

favor against one Hyre, and an execution thereon in the hands of the sheriff of Erie county, procured a sale to be made of the right and title of Hyre to one hundred acres of land in Amherst, in that county; that the plaintiff, being the highest bidder, became the purchaser at $285; that immediately after the sale, the plaintiff, as purchaser, and the defendant as plaintiff in the execution, adjusted the amount bid for the land, the latter receiving from the former the promissory note, for the detention of which this action was brought, and giving back his own note for $15, being the difference between the note first mentioned and the sum bid for the land. The note in controversy was made by one John Dingens, and was for the payment of $300 to the plaintiff's order in six months from date with interest, and had not become payable when it was transferred to the defendant as above mentioned. It was proved to have been given for money loaned by the plaintiff to Dingens; and when the plaintiff delivered it to the defendant, he endorsed it in blank. The adjustment of the amount bid was immediately explained to the sheriff, who made out and executed the duplicate certificates of sale required by the statute, one of which he delivered to the plaintiff, and the other was filed in the county clerk's office; and the defendant paid the sheriff's fees.

The plaintiff proved that, at the time of the sale, the land was encumbered by a mortgage for $425, given by Hyre for purchase money, and by a judgment against Hyre for $800, both being prior liens to the judgment upon which the sale took place, and together amounting to more than the value of the land. The plaintiff is a native of Switzerland, and speaks the French language, but cannot speak English, and had been in this country only a few months at the time of the sale. It was proved that five or six weeks prior to the sale of the land, the defendant, knowing of the prior mortgage and judgment, told the plaintiff that the land was free and clear of all encumbrances, and urged him to attend the sheriff's sale and become the purchaser of the premises, assuring him that he could make a great bargain; and that, on the day of sale, he sent a person to give the plaintiff notice that the sale was then to take place.

The plaintiff also proved that on the day of sale, and after the land had been struck off to him, but before he had delivered the note and received the sheriff's certificate, the defendant again assured him, in answer to an inquiry made by the plaintiff, that the premises were entirely free from encumbrances. This last piece of evidence was admitted against an objection by the defendant's counsel, who insisted that declarations by the defendant after the sale were not competent, and the decision was excepted to. The plaintiff also proved that after the sale the defendant had a conversation with a person who dealt in groceries, in which the latter inquired of him, why he had represented to the plaintiff that the land was unencumbered, and why he had not informed him of the prior mortgage and judgment, and that the defendant replied, " If you put water in your wine, do you go and tell of it ?" This evidence was also given after an objection to its competency had been made and overruled ; and the defendant excepted to the decision.

The plaintiff then proved that, on the day after that on which the sale took place, he offered to deliver up to the defendant the note for fifteen dollars, and to assign to him the sheriff's certificate of sale, and demanded of him the note of Dingens, which the defendant refused to give up.

The defendant's counsel moved for a nonsuit, insisting that under the circumstances of the case this action could not be maintained, even though the defendant's representations were fraudulent ; but the court denied the motion, and the defendant excepted.

The defendant, after proving the regularity of the proceedings under which the sheriff's sale took place, and that the sheriff assumed to sell only the right and title of Hyre, gave some evidence tending to show that the plaintiff had been informed of the existence of the prior liens before he purchased, and that the existence of these liens had been spoken of *in English* at the time of the sale, and also that he, the defendant, had, before the sale, been advised that the prior judgment for $800 was fraudulent and invalid.

The evidence being closed, the defendant insisted, and de-

sired the court to charge that the prior liens being matters of record, the plaintiff was chargeable with notice of them, and that the sale having been made pursuant to law, and with such notice as the law required, the plaintiff could not set up any want of knowledge of material facts. He also desired specific instructions to be given respecting the effect of particular portions of the defendant's evidence ; but the court refused to charge as requested, and in its charge instructed the jury that if the plaintiff had been induced to make the purchase at the sheriff's sale, by means of fraudulent representations made to him by the defendant, the law permitted him, upon discovery of the fraud, to rescind the sale, and bring replevin for the note which he had transferred to the defendant on account of his purchase. He submitted to the jury, as a question of fact, whether the defendant had, as alleged, fraudulently misrepresented the condition of the land in respect to encumbrances, to the plaintiff, and stated that if he had done so, the plaintiff was entitled to recover, unless the plaintiff, when he purchased, knew of the encumbrances referred to, and that if he had such knowledge, the defendant was entitled to a verdict. The defendant excepted to the charge, and the jury found a verdict for the plaintiff for $314,25, being the amount of the note and interest. A bill of exceptions was signed by the recorder.

*H. K. Smith,* for the plaintiff in error, insisted that the plaintiff was not in such a situation as that he could rescind the contract by which he parted with the note. A party to a contract cannot rescind it, unless both parties can be placed in the same condition in which they were before the contract was made. (*Chit. on Cont.* 678, 752 ; *Hunt* v. *Silk,* 5 *East,* 449 ; *Kimball* v. *Cunningham,* 4 *Mass. R.* 502 ; *Conner* v. *Henderson,* 15 *id.* 320 ; *Vorhees* v. *Earl,* 2 *Hill,* 288 ; *Hogan* v. *Weyer,* 5 *id.* 389.)

The sale in question was in the nature of a judicial sale, and did not constitute in any sense a contract between the plaintiff in the execution and a purchaser. The principles which govern cases between vendor and purchaser of goods do not apply.

Such sales as this can only be vacated by the order of the court which issued the process; and while the sale remains in full force, the plaintiff retaining what he bargained for, cannot call upon the defendant to refund the consideration paid.

The effect of the sale was to extinguish a portion of the judg- ment equal to the amount of the plaintiff's bid. This cannot be reinstated.

*M. Fillmore,* for the plaintiff, cited *Root* v. *French,* (13 *Wend.* 570, 574;) *Ash* v. *Putnam,* (1 *Hill,* 302, 305;) *Olmstead* v. *Hotailing, (id.* 317, 318.)

Where a party defrauded does all in his power to restore the opposite party to his former position, he may rescind, and recover what he has parted with. If the defendant has, by his own fraud, so involved the transaction that he cannot be placed in the situation which he before occupied, he cannot object the con- sequences of his fraudulent conduct, as a bar to the right of the other party to rescind the contract.

*By the Court,* BEARDSLEY, J. Upon the evidence as detailed in the bill of exceptions, there is little room to doubt that the plaintiff was imposed upon and defrauded. The charge of the recorder placed the cause before the jury on its true ground in point of morality. They have found that the plaintiff was in- duced to purchase the land, by the defendant's representations and assurances; that these were false and fraudulent; that the purchase was made without knowledge of their falsity; and thus the plaintiff was deprived of his property.

It would be a scandal to the law of any country, if it failed to furnish redress for such an injury. Our system is not yet subject to that reproach, and I am glad to find that the remedy resorted to in this case is appropriate to its object.

A person who is induced to part with his property on a fraud- ulent contract may, on discovering the fraud, avoid the contract and claim a return of what has been advanced upon it. Fraud destroys the contract *ab initio,* and the fraudulent purchaser has no title. (*Chit. on Cont.* 406, 678 *to* 681, *Am. ed. of* 1842.) But if

the party defrauded would disaffirm the contract, he must do so at the earliest practicable moment after discovery of the cheat. That is the time to make his election, and it must be done promptly and unreservedly. He must not hesitate ; nor can he be allowed to deal with the subject matter of the contract and afterwards rescind it. (*Id.* 408, 409, 680.) The election is with him ; he may affirm or disaffirm the contract, but he cannot do both ; and if he concludes to abide by it, as upon the whole advantageous, he shall not afterwards be permitted to question its validity.

The party who would disaffirm a fraudulent contract must return whatever he has received upon it. This is on a plain and just principle. He cannot hold on to such part of the contract as may be desirable on his part, and avoid the residue, but must rescind in *toto*, if at all.

It was urged on the argument that a contract cannot be rescinded by one of the parties alone, so as to authorize a recovery by him of what had been paid upon it, unless the other party is thereby fully restored to the condition in which he stood before the contract was made. This is certainly the general rule ; but in cases of fraud, such as this was, it can only mean that the party defrauded, if he would rescind the contract, must return or offer to return every thing he received in execution of it. To retain the whole, or a part only of what was received upon the contract, is incompatible with its rescision ; and hence the necessity of restoring what had been received upon it.

This is not exacted on account of any feeling of partiality or regard for the fraudulent party. The law cares very little what his loss may be, and exacts nothing for his sake. If, therefore, he has so entangled himself in the meshes of his own knavish plot, that the party defrauded cannot unloose him, the fault is his own; and the law only requires the injured party to restore what he has received, and, as far as he can, undo what had been done in the execution of the contract. This is all that the party defrauded can do, and all that honesty and fair dealing require of him. If these fail to extricate the wrongdoer from

the position he has assumed in the execution of the contract, it is in no sense the fault of his intended victim, and upon the principles of eternal justice, whatever consequences may follow, they should rest on the head of the offender alone.

Here the plaintiff did all he could to rescind the contract in *toto.* As he had been grievously taken in, he was entitled to a return of his note, and that having been refused, this action was well brought.

Judgment affirmed.