RYNEAR v. NEILIN.

Where a party sought to have a deed set aside on ground of fraud in a failure of payment as agreed, it was held that the deed could not be contradicted in that particular unless by competant proof of fraud in the consideration.

A contract in relation to land claims, which stipulated a penalty of fifty dollars to be paid as damages by the party failing to perform, should be enforced at law and not in equity.

A party must restore what he has received on a contract before it can be rescinded in equity.

APPEAL from Clinton District Court.

*Opinion by* WILLIAMS, C. J.   An action of trespass *quare clausum fregit* was brought by Jonathan Rynear and Philena, his wife, to October term, 1849, of the district court of Clinton county, against Patrick Neilin.   The trespass complained of is for entering upon the land of the plaintiffs, and cutting and taking timber.   The writ of summons being duly served on Neilin, he appeared and filed his petition for an injunction to stay proceedings in the trespass case, and also for a discovery, and also praying that the deed from him by which plaintiffs claimed to hold certain land, should be cancelled and made void.   Having filed his bond, with security, the injunction was allowed, and proceedings in the action at law were stayed.   A hearing was had by consent, at the Judge's chambers on the 19th day of June, 1850, upon the bill and answer with the evidence in the case.   The court decreed that the deed of conveyance made by Neilin to Nathan Rawlings, under whom Rynear and wife claimed, should be cancelled, annulled and held for nought; that the land thereby conveyed, should be by the decree, restored in fee simple to Neilin, and that Rynear and wife should pay the costs.

Neilin alleges in his bill, "that in February, 1844, he made an agreement, in writing, with one Benjamin S.

Rynear v. Neilin.

Rawlings, that in consideration of said Rawlings' conveying to him a certain farm, known as the Nolin farm, situated in Clinton county, he would convey to him, the said Rawlings, by deed of warranty, the south-east quarter of the south-west quarter of section No. thirty, in Township eighty-one, north of range five, east of the fifth principal meridian, in Clinton county. That in pursuance thereof, said Rawlings procured the execution, in part, of a deed of waranty from Neilin, on the 6th day of March, 1844, for the land to one Nathan Rawlings." In this transaction he charges fraudulent confederation, &c., between Benjamin S. Rawlings and Nathan Rawlings to defraud him of the land. That when executing the deed he was under the impression that he was executing it in pursuance of his agreement to Benjamin; that when he demanded of Benjamin S. Rawlings his deed for the " Nolin farm" he refused to make and execute it, but soon afterward sold and disposed of all the timber land which belonged to the Nolin farm, the chief value of which consisted therein. That he did not discover that he had executed his deed to Nathan Rawlings, until Benjamin subscribed his name as a witness thereto; that upon the refusal of Benjamin to make a deed to him for the " Nolin farm," he refused to deliver his deed of conveyance to said Rawlings, but that it was forcibly and fraudulently obtained and retained by said Rawlings and Nathan Rawlings; that he received no other consideration for said deed. That afterwards Nathan Rawlings was married to Philena Ames, and soon after died. That afterwards Philena was married to Jonathan Rynear, both of whom are made parties to the action as defendants; that said Philena, on the 7th day of March, 1849, procured his deed to be recorded; that he has had uninterrupted possession of the land, and up to the time of the recording of the deed which he made to Nathan Rawlings for said land, and since then until the 9th of October, 1849, when Rynear and wife commenced their action of trespass *quare clausum fregit*

against him for cutting timber thereon. That this action is pending in the district court of Clinton county undisposed of, and that he cannot defend it until the question of title is settled." He then concludes with a prayer for a writ of injunction, &c.

Depositions were taken in the case. From them and the exhibits, one of which is the agreement of contract between Neilin and Benjamin S. Rawlings for the exchange of lands, the following facts appear. This agreement is dated March 15th, 1844. By it Neilin stipulates to convey to Rawlings, by deed of warranty, forty acres of land, and also to convey, by quit claim deed, certain improvements then held by him. Rawlings, on his part, agreed, in consideration thereof, to deed by quit claim to Neilin, a certain tract of land known as the Nolin farm, and give peaceable possession thereof within three weeks from the date of the contract. Neilin also agreed to give him possession within the same lapse of time. The contract concludes with the following penal provision: "Either party failing to comply shall forfeit and pay to the other party fifty dollars, in good and lawful money current in the United States." The evidence further shows that Neilin took and kept possession of the Nolin farm for some time, and then sold it to one Hollis for two hundred dollars. It also is in proof that the deed from Neilin is executed to one Nathan Rawlings, and that Benjamin S. Rawlings is the subscribing witness to its execution. The deed is not acknowledged by Neilin, but is recorded. The execution was proved before a justice by the subscribing witness. It also appears from the evidence, that the timber land which was included in the contract of sale from Rawlings to Neilin was claimed by another person, by virtue of a purchase from Nathan Rawlings, by whom it was held and afterwards purchased at the public land sale; also, that Neilin continued to hold possession of, and right to, the prairie portion of the Nolin farm, on which he lived. That two years after the making of the contract

with Rawlings, Neilin sold the Nolin farm, being the prairie part upon which the improvements were, to one John Hollis for $115 00, and a mare and colt valued at $45 00. Nathan Rawlings took and held peaceable possession of the land conveyed to him by Neilin. It does not appear that the deed from Rawlings to Neilin, for the land in dispute, had been made. With this brief statement of the material facts as presented by the evidence, we will proceed to consider the law of the case.

The contract, as made by the parties themselves, after setting forth the terms upon which it was made by express provision, furnishes the means of redress in case either party should fail to comply with his undertaking. The parties themselves, thereby agreed upon the damages to be paid, upon a failure of either to fulfil his part of the contract in the stipulation of forfeiture of fifty dollars. The complaint in the bill is that Rawlings had failed to comply with the terms of his contract, in not having executed and delivered a deed for the land in dispute, as by his agreement he was bound to do, although it was demanded of him by Neilin. The fraud complained of in the bill relates to the execution of a deed by Neilin to Nathan Rawlings which Neilin seeks to avoid, upon the ground that he was deceived in the making of it; that he never made a voluntary delivery of it, and that he had not acknowledged it. There is no attempt in the bill to assail, directly, the consideration of the contract for fraud. From the testimony in the case it is evident that the title to the land in dispute, was, at the time of the contract, in the government of the United States; that it was merely " a claim " of which Rawlings claimed to be possessor or owner, without any title by purchase. This tenure is often uncertain. The deed of conveyance which he stipulated to make of it to Neilin, was to be a mere quit claim. The failure on his part, to make the deed as agreed, was to render him liable to pay to Neilin the sum of $50 00. As the consideration is not

impeached for fraud, and is expressly acknowledged as cash in the deed of conveyance from Neilin to Nathan Rawlings, it cannot be impeached for the purpose of defeating the estate thereby granted, in the manner attempted by the grantor.  The fraud complained of by him is the refusal of Rawlings to convey as stipulated in the contract.  He does not allege in his bill, nor does the evidence show fraud in such a manner that the consideration can be impeached and the deed thereby rendered void.  The evidence goes no further than to show that the timber land was claimed and held by another person at the time he contracted for it with Rawlings; and also, that Neilin repudiated the deed after he had executed it, upon ascertaining that it was made to Nathan Rawlings instead of Benjamin.  Having acknowledged the consideration of the deed to be paid, he cannot be permitted to contradict that fact by proof, so as to avoid his own solemn act, unless by competent proof of fraud. *Grout* v. *Townsend*, 2 Denio, 339, 340; *Morse* v. *Shattuck*, 4 N. H., 429; *Dwight* v. *Pomeroy*, 17 Mass., 324, 325; *McCrea* v. *Purmort*, 16 Wend., 173.

But there is another view of this case which must forever, in a court of Chancery, preclude Neilin from procuring the decree prayed for in his bill.  He seeks relief here, when, by his own agreement in writing with Benjamin S. Rawlings, he, by express terms, has chosen and provided a remedy at common law, in the event of a failure on the part of Rawlings to make the deed of conveyance as stipulated. The sum of $50 was fixed as the forfeiture in damages, should either of the parties fail to perform, as agreed upon by them.  This stipulation afforded him a plain remedy at law, for the wrong of which he complains.  To this he was legally bound to resort.  He will not be permitted to hold the land which he received in exchange for his, by the contract, for years, then sell or dispose of it for a price, and then come into a court of chancery, and procure its aid in rescinding his contract without having, within a reasonable

Rynear v. Neilin.

time, first offered to place the other party in *statu quo.* The evidence shows that he held and occupied the Nolan farm improvements for two years, and then sold them to one John Hollis for the price of $160 00. To grant the relief sought under such circumstances would be to contravene one of the plainest principles of equity. He was bound to do equity on his part by restoring the consideration received by him from Rawlings, before he could be relieved in a court of equity. The consideration which he received should have been restored within a reasonable time, if he would have the contract rescinded and rendered void in equity. On this point his case is signally deficient. He cannot be allowed to avail himself of the benefit of the contract and then call successfully upon a court of equity to rescind it. " It is a rule of equity jurisprudence that a contract will not in general be rescinded, where the contracting parties cannot be placed in the identical situation which they occupied, and cannot be made to stand upon the same terms which existed when the contract was made." *Shaeffer* v. *Sleade*, 7 Black. 184; *Galloway, Jr.* v. *Barr and Fouley*, 12 Ohio, 363; *Young, et. al.* v. *Isett*, Morris' Iowa, 469; *Masson* v *Booat*, 1 Denio, 69.

It is unnecessary to consider the points made and the positions assumed relative to the testimony, as the complainant has not presented such a case as entitles him to relief in equity. We merely say that the answer of the respondents denies the material allegations of the bill, and it is not sustained by the evidence.

Decree reversed.

*Wm. E. Leffingwell*, for appellants.

*Platt Smith*, for appellee.