Nov. Term,<br>
1854.<br>
———<br>
REED<br>
v.<br>
RUDMAN.

---

REED v. RUDMAN.

5  409<br>
141  312

*A.* agreed to convey to *B.* a tract of land, on a day specified. Concurrently therewith, and in consideration thereof, *B.* was to assign to *A.* two land-warrants.

*Held,* that a tender of the land-warrants before the day specified was unavailing.

*Held,* also, that a refusal of *A.* to receive the warrants before the day specified, on other grounds than that they were not tendered at the proper time, was not material.

*Held,* also, that a tender of the warrants, assigned, not by *A.*, but by a third person, in blank, a month after the time stipulated, in connection with the hardship and fraud of the contract as shown by the evidence, put it in *A.'s* power to rescind.

Courts of Equity are reluctant to enforce contracts which are unconscionable or tinctured with fraud. They leave the parties to their remedy at law.

ERROR to the *Franklin* Circuit Court.

STUART, J.—*Rudman* filed his bill in chancery against *Reed*, setting up an agreement dated *August* 22, 1850, for the sale of certain real estate in *Franklin* county, whereby *Reed* agreed to convey to *Rudman* in fee, on or before the

Saturday,<br>
December 2.

15th of *September*, 1850. Concurrently therewith, and in consideration thereof, *Rudman* was to assign to *Reed* two land-warrants for one hundred and sixty acres each. *Reed* was to have possession of the land in *Franklin* county till *March*, 1851, and *Rudman* to be entitled to *Reed's* interest in the growing crop. For the faithful performance of these stipulations by the parties, a penalty of 800 dollars was annexed.

The bill alleges a tender of the land-warrants at the proper time; and a demand upon *Reed*, and refusal by him to deliver the deed.

The bill further sets up, that before the making of the preceding contract, viz., on the 26th of *August*, 1845, *Reed* had mortgaged the land to one *Hoagland* to secure the payment of 1,025 dollars; that in 1851, *Holland*, as the executor of *Hoagland*, had foreclosed the mortgage for a balance of 551 dollars yet due thereon; that in *March*, 1851, *Rudman* took possession of the land, and in *June*, 1851, was compelled to pay to *Holland* the amount of the decree, to save the land from sale.

It is tacitly admitted that the land-warrants were never delivered to *Reed*, but were still in the possession of *Rudman*. *Reed's* land was also in his possession. Nor is there any tender of the land-warrants in Court. The prayer of the bill, in substance, is, that *Rudman* be allowed to retain the land-warrants at their value; that *Reed* be compelled to make a deed in pursuance of the contract, and be decreed to pay to *Rudman* the amount paid by him to *Holland*, deducting 280 dollars, the value of the land-warrants.

The answer of *Reed* expressly denies the tender of the land-warrants at, &c., assigned, &c. *Reed* sets up, also, that there were other considerations besides the land-warrants; that he was induced to sign the agreement by fraud—that *Rudman* fraudulently represented that he made the purchase for his nephew, and induced *Reed* to believe that he and *Reed* were to proceed to *Iowa* together to speculate in lands in partnership, particularly a certain tract of which *Rudman* pretended he was apprised, containing a valuable mill-seat, &c., and that *Rudman* having wholly failed, on

his part, to perform, &c., *Reed* had elected and still elects to abandon and rescind the contract.

The decree of the Court was in accordance with the prayer of the bill.

After carefully examining the position assumed by the parties, and canvassing the evidence, we are wholly at a loss to know upon what ground this decree can be sustained.

The first deposition of *Rudman* is that of a witness unable to read or write, who testifies about papers and conversations of the parties which his whole evidence clearly shows he did not understand. The cross-examination further discredits him, by showing that he had been tampered with by *Rudman.*

The second deposition (*Ulster's*) relates to a conversation which occured some days prior to the 15th of *September.* *Rudman*, it seems, offered *Reed* some papers which he called land-warrants, and requested *Reed* to make him a deed. *Reed* declined till the mortgage held by *Holland* was arranged.

It may be observed, on this evidence, that it makes nothing in favor of *Rudman;* for admitting the papers offered by *Rudman* to be land-warrants, the tender before the 15th of *September* availed nothing. *Reed* was not bound to make the deed before that date, nor was it material that he did not put his excuse on that ground. *Clement* v. *Clement*, 8 N. H. 210.

The deposition of *Kilgore* shows the tender of the land-warrants assigned in blank by a third person, made a month after the 15th of *September*, 1851, and *Reed's* refusal, &c., because they were not tendered on that day. His evidence, in other respects, very strongly supports the fraud set up in the answer, in relation to the execution of the agreement.

His deposition details · several efforts at compromise made by the parties, all of which proved abortive.

*Burton's* deposition shows the land to be worth 1,000 dollars, and the land-warrants to be worth from 290 to 330

Nov. Term,
1854.

REED
v.
RUDMAN.

dollars. Other witnesses put a lower estimate on the land-warrants.

The deposition of *Farquhar* sustains the fraud set up in the answer, detailing sundry admissions of *Rudman* in reference to the inducements held out to *Reed* to execute the contract.

A letter of *Rudman* to his wife after their separation, dated *April* 29th, 1851, seems to have been put in evidence by agreement.

This miscellaneous epistle, so remarkably in contrast with the chaste gravity of a chancery proceeding, contains the following admission, which, though neither true in detail, nor directly pertinent to the issue, yet being in by consent, is entitled to some consideration on the question of the rescission of the contract by the parties. It runs thus: "I have given up the *Reed* farm. He gave me 100 dollars to let him off. I thought it better than to law about it, the way I am now situated."

This is the substance of all the evidence in the cause; and whether it be regarded as an unconscionable contract, or as tinctured with fraud, it is such as Courts of Equity are reluctant to enforce. They leave the parties to their remedy at law. 6 J. C. R. 222.—2 Story's Eq. 5.—11 Peters 229. We are of opinion that a specific performance should have been refused and the bill dismissed. Under the circumstances, *Reed* had nothing to tender or restore in order to place the parties in *statu quo.* Land, land-warrants, crops, and all, were already in the possession of *Rudman.* The manifestation of intention to rescind made to *Kilgore,* the agent and attorney of *Rudman,* adhered to as it was by the answer filed, was sufficient. The tender of land-warrants assigned, not by *Rudman* himself, but by a third person, in blank, and a month after the time stipulated, in connection with the hardship and fraud of the contract, put it in the power of *Reed* to rescind. *Masson* v. *Bovet,* 1 Denio 69. His subsequent acts are abundant evidence of that intention.

Whether *Rudman* has any remedy on the penalty of the agreement; whether the payment on his part to *Holland*

was voluntary; or whether he has a lien on the land for the money thus advanced, are questions not made by the case before us, and we intimate no opinion. All we decide is that he is not entitled to a specific performance.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*J. D. Howland*, for the plaintiff.

*G. Holland*, for the defendant.