There was no doubt sufficient evidence to justify the submission of this cause to the jury, upon the question of fraudulent misrepresentation and concealment on the part of Pinner, when he purchased the goods: and as the defendant Michael advanced nothing upon the faith of Pinner's title, he is in no better situation than Pinner himself. If the case was made out as to Pinner, the title of Michael under the assignment must of course fail, and he had no right to refuse to deliver the goods upon demand.
It is insisted that an action to recover possession will not lie against Pinner, because he was not in possession at the time *Page 271 
of the commencement of the suit; and because his previous possession was rightful, no attempt having been made by the plaintiffs to rescind until after the assignment and delivery to Michael; and that at all events there can be no recovery against Pinner and Michael, jointly. These objections are, I think, sufficiently answered by the cases of Garth v. Howard et al. (5 Car. Pa., 346), and Jones v. Dowle (9 Mees. Wels., 19). In the first of these cases, the defendant Howard, being lawfully in possession of certain plate belonging to the plaintiff, had, without authority from the plaintiff, pledged it, with the other defendant Fletcher for £ 200. The plaintiff demanded the plate of the latter, and then brought detinue against both. It was objected there, as it is here, that Howard had no possession at the time of the commencement of the suit, and hence the action would not lie against him. The court held, that the action would lie against both. TINDAL, Ch. J., said: "The verdict must pass against both defendants, as one could not stand in a better situation than the other." The decision in this case was put partly upon the ground that the defendant Howard had not assumed to part with the whole interest in the property, but retained some control over it by virtue of the right of redemption. But the Chief Justice also says: "The question is, whether Howard has wrongfully pledged. If he has done so, he is answerable." The other case, viz.: Jones v. Dowle, fully sustains the latter ground. There the plaintiff had bought a picture at an auction, at which the defendant acted as auctioneer. The latter, by mistake, entered the name of one Clift as the purchaser, and delivered the picture to him. The plaintiff demanded the picture of Clift, who refused to deliver it, and then brought detinue against the auctioneer. The counsel for the defendant insisted that the plaintiff was bound to show that the picture was in the possession or custody of the defendant, or of an agent over whom he could exercise control, at the time of bringing the action. But the court overruled the objection. PARKE, B., said: "Detinue does not lie against him who neverhad possession of the chattel; but it does against him who once had, but has improperly parted with the possession of it." *Page 272 
The theory upon which these cases proceed is perfectly sound, and applies directly to the present case. It is, that where a person is in possession of goods belonging to another, which he is bound to deliver upon demand, if he, without authority from the owner, parts with that possession to one who refuses to deliver them, he is responsible in detinue equally with the party refusing. He contributes to the detention. It is the consequence of his own wrongful delivery. The action in such cases may properly be brought against both; because the acts of both unite in producing the detention.
It does not affect the principle, that Pinner in this case came to the possession of the goods by delivery, and under the former purchase, and not as a trespasser. If they were fraudulently obtained, he had no right to retain possession for one moment as against the plaintiffs, and could transfer no such right to his assignee. The action proceeds, not upon the ground of a tortious taking, but of a wrongful detention; and to this, Pinner has contributed by placing the goods in the possession of the defendant Michael, who refused to deliver them. The case cannot be distinguished in principle from the two English cases, to which I have referred.
But it is further insisted, that the plaintiffs should have been nonsuited; because they did not restore or offer to restore the notes of Pinner before commencing the suit. There is no doubt of the general rule, that where one party to a contract elects to rescind it for fraud, it is an indispensable preliminary that he surrender all that he has received from the other party upon the contract; and, if he has disabled himself from doing this, it is too late to rescind. It has been held in several cases, that this principle applies when the party seeking to rescind has received the promissory note of a third person, as the consideration of the contract on his part. He must, in such cases, restore or offer to restore the note before bringing the suit. (Masson v.Bovet, 1 Denio, 69; Baker v. Rollins, 2 Denio, 137.) In the present case, the notes received by the plaintiffs were the notes, not of third persons, but of Pinner himself; and there is this important distinction to be observed, viz.: that in the *Page 273 
cases cited, the notes were not affected by the election of the party to rescind the contract, but might still be enforced notwithstanding the rescission, while, in this case, the moment the contract was rescinded, the notes, if in the hands of the plaintiffs, became entirely invalid and worthless. I am not aware that it has been held, that in such a case the restoration of the note is a condition precedent to the right of the party to rescind. It is intimated by BEARDSLEY, J., in the case of Baker
v. Robbins (supra), that if the notes in that case had been shown to be of no value, it might not have been necessary to return them. The notes of Pinner in this case, were of course rendered utterly valueless by the rescission of the contract. The rule has not, I think, been carried to the extent of holding that in such a case, the notes must be returned before a suit is brought. It would certainly be more in consonance with equity, to hold it sufficient to produce the notes upon the trial, and surrender them to the custody of the court, as in that case the rights of both parties are protected. If the fraud is made out and the contract subverted, the notes are void and will be canceled by the court. On the other hand, if the plaintiff fail to establish the fraud, the notes can be restored to him if the nature of the contract is such that justice requires it. Such a rule is not, I think, in conflict either with authority or principle, and may, therefore, be safely adopted. The negotiability of the notes in this case is of no importance, so long as they have not been negotiated: nor do I think it would affect the rule if they had been at some period out of the hands of the plaintiffs, provided the possession and exclusive interest was in them at the time of the trial. The motion for a nonsuit, therefore, was properly denied.
The remaining questions arise upon the charge of the judge. He instructed the jury, that if the defendant Pinner was insolvent and concealed the fact of his insolvency, with the design of procuring the goods and not paying for them, it was a fraud, which would avoid the sale at the option of the plaintiffs. It seems to have been supposed by the counsel in this case, if not by the court below, that this instruction is in conflict with *Page 274 
something said by myself, when this cause was here upon a former occasion. (18 N.Y., 295.) My language must have been very inexplicit, if what I then said will bear the interpretation which appears to have been given to it; as I am not conscious of having ever held an opinion on this subject differing in the slightest degree from that expressed by the judge before whom this cause was tried.
The principles I intended to assert were: 1. That a mere intention of a vendee not to pay for the goods he purchases, unaccompanied by any misrepresentation or concealment, is not such a fraud as will vitiate the sale; and 2. That the bare omission of a purchaser to disclose his insolvency at the time of the purchase, not accompanied by any intent to defraud, is in like manner insufficient to destroy the contract. But I did not say that when the two are combined, that is, when the concealment of the fact of insolvency is accompanied by an actual intent to cheat, there is no fraud. That question was not presented by the case. The difficulty with the case at that time was, that the judge had not in his charge connected the two circumstances together, viz., the intent and the insolvency, but, on the contrary, by his refusal to charge as requested, authorized the jury to infer, that if they should find that Pinner was insolvent and omitted to disclose the fact, although without any fraudulent intent, their verdict should be for the plaintiff. This was a manifest error, and for that the judgment was reversed.
The judge, upon one construction of a portion of his charge, appeared to have instructed the jury, that although Pinner was not insolvent, and was guilty of no misrepresentation or concealment of any preexisting fact, yet if, when he made the purchase he intended to avoid paying for the goods, this would be such a fraud as would vitiate the sale. What was said in regard to the effect of a naked intent not to pay for goods purchased was designed to meet this view of the charge. There can, I apprehend, be no doubt of the correctness of the doctrine then advanced upon this subject. *Page 275 
The jury were further instructed, that, in order to avoid a sale for fraud, the false representation need not be such as would be indictable under the statute against false pretenses; and to this the counsel excepted. This exception is clearly untenable. The only case which appears to afford any countenance to the doctrine contended for, is that of Cross v. Peters. (1 Greenl., 378.) Such a position was not necessary to the decision of that case, and the reasoning in its support is, I think, unsatisfactory. The judgment should be affirmed.
All the judges concurring,
Judgment affirmed.