## SUPREME COURT.

### Charles E. Benson agt. John Tilton.

A decree for *specific performance* to convey real estate by deed will be made after the day fixed in the agreement for its delivery, and the payment or delivery of the consideration therefor, where the *time fixed* appears to have been disregarded by the parties as of the *essence of the contract.*

A *strong evidence* of such disregard by the parties in this case appeared from the fact that the leasehold premises and personal property to be given by the plaintiff as a consideration for the deed of real estate, to be delivered by the defendant, had been for several days, both before and after the day fixed for performance, *in the possession of the defendant by his agents.*

.The plaintiff seeks by this action to compel the specific performance of a contract dated 24th September, 1860, whereby the defendant agreed to convey to him, on the ninth day of October following, two parcels of land in New Jersey, subject to a mortgage described in the contract, in consideration of receiving from him on that day the stock of goods and fixtures of a certain store in Brooklyn, then kept and occupied by the plaintiff, with the horse, harness, and grocer's wagons used in the business, and the assignment of the lease by or under which the plaintiff held possession of the store. The defendant claims that he was exonerated from all obligations under the contract because of the failure of the plaintiff to assign and deliver to him the lease on the ninth day of October, as he had agreed to do by the contract—thus assuming that time was of the essence of the contract.

> John M. Martin, *for plaintiff.*
> Harrington and Grieff, *for defendant.*

Scrugham, Justice. In determining this question, a court of equity, while carefully regarding the expressions of the contract upon the principle that in general the parties must be considered as intending what they express, will also in-

quire into the conduct of the contracting parties to ascertain whether they have not so acted as to enable the court to give to the contract a meaning different from its *prima facie* obvious import, or whether they have not disregarded the appointed day, and dealt together on the footing that the contract should be construed as a contract to complete in a reasonable time. (*Parkin* agt. *Thorald*, 11 *Eng. Law and Eq.*, 277.)

To decide whether the day fixed in the agreement for its completion was disregarded by the parties, it will be necessary to determine whether either of them performed, or offered to perform, his part of the contract on that day. Upon this question, as upon almost every question of fact presented on the trial, there is much conflicting evidence; and as the rights of the parties in the view which I have taken of the case depend mainly upon its solution, it is proper that I should state briefly the considerations which have led to my conclusion upon it. It would be a circumstance corroborative of the evidence produced by the defendant to show that he tendered and demanded performance on the day fixed, if the object of the contract or the intentions he had in view in making it would be defeated, or in any manner injuriously affected by a failure to complete it on that day. The object of the contract was to effect an exchange of the lands in New Jersey for the stock of goods in the store and other property, and so much of the term demised by the lease as should be unexpired on the ninth day of October, 1860. To effect this object, it was not necessary that a formal assignment of the lease should be executed and delivered on the ninth of October; but it was essential that the defendant should have possession on that day of the premises demised by the lease—for otherwise he would not enjoy the whole of the term which was to be assigned to him; and as before, and on the ninth day of October, 1860, he, by his agents, had possession of the stock of goods, fixtures, and store, and was conducting the

business there with the consent of the plaintiff, he would not probably be prejudiced by the neglect of the plaintiff to deliver to.him an assignment of the lease on that day, or by a delay in that respect for a reasonable time. The intention of the defendant in making the contract appears to have been to procure the store with its fixtures, stock of goods, and other property used .in the business for the ben-.efit of his brothers, Wm. H. Tilton and Robt. L. Tilton, that they might be established in business there. In pursuance of this intention, the defendant authorized Wm. H. Tilton to make the agreement with the plaintiff, and generally to manage the business growing out of it. Wm. H. Tilton, believing that the lease was not transferable without the consent of the lessor, called with the plaintiff upon the agent of the landlord to see whether such consent or a new lease would be given. This was on the tenth of October; and it is a circumstance scarcely consistent with the proposition that the defendant had, through the same Wm. H. Tilton, rescinded the contract on the day before. The defendant claims that the deed was tendered, and the assignment of the lease demanded by Wm. H. Tilton, as his agent, at an interview between him and the plaintiff in the presence of Robert L. Tilton and Robert T. Smith, in the office in the back part of the store. William H. Tilton testifies that this interview was on the ninth of October, and Smith states that he thinks it was on the ninth, but is not certain;. and this same witness also testifies to another interview between William H. Tilton and the plaintiff, which he says took place on the day before that at which the deed was exhibited, and at which first interview William H. Tilton told the plaintiff " he would be ready, and that he wanted him to have the lease." William H. Tilton does not state that any interview took place between him and the plaintiff before the ninth, but he mentions one as having occurred on the morning of that day, at which he told the plaintiff that the defendant was ready to complete the contract

on his part. If this was the same interview of which Smith speaks as occurring on the day before that at which the deed was exhibited, it would fix the time of the latter as of the tenth of October. Robert L. Tilton testifies that he was present at but one interview between William H. Tilton and the plaintiff at the store; that it was in the back office; that he went into the office with them, and that he "thinks it was on the 10th; the day after the agreement was to be consummated." The plaintiff fixes the time of the interview in the back office at which the deed was exhibited as the evening of the 10th of October, and he states that he and William H. Tilton immediately thereafter went from the store to the office of Mr. Mackey, the agent of the landlord, and had the interview with him to which I have referred, and which all agree occurred on the tenth of October.

Edward K. Edlin, who was a clerk in the store at the time of the interview between the Messrs. Tilton and the plaintiff in the back office, and who noticed it, testifies that on that occasion William H. Tilton and the plaintiff went from the store together to Mr. Mackey's office, and afterwards returned together.

Considering this testimony in connection with the circumstances to which I have alluded, I have concluded that the interview between the plaintiff and the Messrs. Tilton at which the deed was exhibited occurred on the tenth, and not on the ninth of October, 1860; that the time fixed for the delivery of the deed and the assignment of the lease was not regarded by the parties as of the essence of the contract, is evidenced by the fact that neither of them performed, or offered to perform, on the day fixed in the agreement; and that the defendant, by his agents, continued in possession of the store for five or six days thereafter. If the delivery of the assignment of the lease on the particular day fixed was a material condition of the contract, the defendant, on restoring to the plaintiff all that he had

received from him under it, might have rescinded it on that day, on the failure of the plaintiff to make such delivery. He could not, however, continue in possession of the premises after that day, and then rescind the contract for having had an intermediate possession of the premises under the agreement; he could not restore the plaintiff to his original position. (*Hunt* agt. *Silk*, 5 *East*, 449; *Mason* agt. *Borst*, 1 *Denio*, 69.) The defendant, it is true, claims that he never had possession of the store; but that his agents went in under an agreement that one of the plaintiff's sons (Alexander Benson) should take charge of the premises until the time for the delivery of the deed. The only witness who testifies to such an agreement is William H. Tilton; and the plaintiff being examined as a witness in his own behalf, contradicts all of his statements in that respect. I do not consider it important to determine this question, for it appears that the defendant's agents were in possession after Alexander Benson left, and so continued after the time fixed for the completion of the contract. By so continuing in possession of the store and of the property received from the plaintiff, the defendant must be considered as having waived his right to a delivery of the assignment of the lease on the day mentioned for that purpose in the agreement; and no other time having been fixed by notice or otherwise, his subsequent acts did not affect the right of the plaintiff to complete the performance of the contract on his part, and demand its fulfillment by the defendant. He did this within a reasonable time, to wit, on the 31st of October, 1860, by the tender and demand made on that day.

In adjudging specific performance, provision should be made to compensate the plaintiff for the loss he has sustained by the delays. In estimating this, it will not be proper to consider the depreciation in the value of the lands; but only the value of their use during the period that they have been kept from him. Damages resulting from such

depreciation would be speculative, and are not such as would necessarily result from the failure of the defendant to deliver the deed at the time appointed—for they are calculated entirely upon the presumption that the plaintiff would have sold the lands if he had possessed the title ; while it is equally reasonable to presume that he would have retained them. Such estimates are proper in regard to contracts respecting leasehold estates—for in such cases the property itself being the term wastes by delay ; and all of the authorities which the plaintiff cites to sustain his claim for such damages refer to leasehold property. The plaintiff is entitled to judgment that the defendant convey to him the lands mentioned in the complaint pursuant to the agreement, and subject to the payment of the principal sum secured by the mortgage therein mentioned, and that he pay the plaintiff such sum as upon a reference to be ordered for that purpose shall be found to be the fair value of the use and occupancy of the premises from the 31st day of October, 1860, to the date of the referees' report in that respect, after deducting all taxes upon the lands that have been or may be paid during that period ; and also that the defendants pay the costs of this action.