## RICH v. NIAGARA COUNTY SAVINGS BANK.

*Agency — dealing with agent instead of principal by mistake — Election — waiver of right.*

M., the principal officer of a savings bank, carried on a banking business in his own name in the room occupied by the bank, taking deposits, etc. Plaintiff deposited moneys with M., the amounts of which were entered in a pass-book given to plaintiff, upon which was printed a statement that the deposits were made with M. individually. All the negotiations in reference to the deposits were had with M., and he was treated by plaintiff as the debtor. In 1868, M. failed. *Held,* that while plaintiff might, when M. failed, and he found that M. and the bank were different persons, have claimed that he had been deceived and held the bank as principal debtor, he was bound to make his election promptly, and failing to do so, and subsequently treating M. as the debtor, and negotiating with him as to payment, he waived his right to elect to hold the bank.

APPEAL by defendant from a judgment in favor of plaintiff entered upon the verdict of a jury, and from an order denying a new trial.

The action was brought by William Rich against the Niagara County Savings Bank to recover for moneys alleged to have been deposited by plaintiff in said bank. The deposits were actually made with Daniel Morse, who was the secretary and a managing officer of the bank, and who did business in the same room with

the bank under the name of "Daniel Morse & Co., bankers." The transaction was similar to the one in *Shields* v. *Niagara County Savings Bank, ante,* page 585. The material facts in this case fully appear in the opinion.

*L. F. & G. W. Bowen,* for appellant.

*B. J. Hunting,* for respondent.

E. DARWIN SMITH, J. The views expressed in the opinion in the case of *Shields* v. *Niagara County Savings Bank, ante,* p. 585, so far as the same relate to the merits of the action, are in a large degree applicable to this case. The plaintiff should have been non-suited at the circuit. The complaint was entirely unproved. The plaintiff did not establish that he ever deposited any of the money for which this action was brought in the defendant's bank, or that the defendant ever received a cent of his money. His proof, on the contrary, clearly showed that said moneys were in fact deposited with Daniel Morse & Co. His bank book was headed "Daniel Morse & Co. with Wm. Rich." Morse received his money in fact and credited it in his pass-book and paid his checks. There is not a particle of proof that any of these transactions were in form or name with the defendant's bank. No fraud or deception is charged in the complaint as against the defendant, and there is no pretense for the recovery of this money as against the bank upon the basis of any fraud in fact, or any imposition practiced by the bank or its officers upon the plaintiff. Upon the face of the transaction the plaintiff dealt and contracted with Daniel Morse. It is true that said Morse was an officer of the bank, but it is also true that he carried on openly and notoriously a separate private banking business at the same place under the name and style of Daniel Morse & Co. The pass-book given to and received by the plaintiff, and in which his account of the money deposited and checks paid were kept, had indorsed upon the outside of the book and printed in large letters, "Banking Office of D. Morse & Co."

The entries in this pass-book of debits for deposits are respectively equivalent, in legal effect, to a receipt or certificate of deposit of the separate amounts which, like a promissory note payable on demand, bound Morse to pay the amount of such deposits upon

request. The first entry in this pass-book on the debit side is dated March 12, 1866, for $30, and this entry is followed by four other debits in that year, by six others in the year 1867, and two in 1868, with credits for checks and other items in the same years on the other side of the account.

These entries were necessarily all made on the production of the pass-book, and were made by Morse. The plaintiff could read and write, and must be presumed to have read the entries in his pass-book, and the indorsement upon the cover of the book. He knew he was dealing with Morse in fact, and that he deposited with him his money and took his receipt therefor in said pass-book. He knew that Morse was doing a banking business, and had known him and dealt with him for seven or eight years; and testified "that he always supposed that his business was attending to the insurance business, collecting notes and buying notes and receiving deposits," and he also testified that he did not know any thing about there being a savings bank, except seeing the sign. "Saw that sign there, and the sign of D. Morse & Co. under it." It does not appear that he ever checked on the savings bank, or did any act professedly with it, or in its name. Morse, it appears, failed in April, 1868, and left the place. Plaintiff applied to him some two weeks before he left for payment of his money, and Morse promised to pay him in a week.

While in all these transactions in form and in fact, Morse was the debtor of the plaintiff, and so treated and recognized by him, yet, when in April, 1868, Morse failed, and the plaintiff found that he and the savings bank were different persons and that he had no contract with the bank, if he had immediately demanded his money of the bank, or a certificate or voucher admitting the receipt of his money by the bank, and disaffirmed the contract with Morse, and claimed that he had been deceived and imposed on by him, and asserted that he intended to deposit his money in the said savings bank, and supposed it was so deposited when left with Morse, and that the pass-book was given by and for the bank and in its customary way of doing business, I think the bank, if the plaintiff could have proved these facts, might have been held responsible for such moneys as the principal debtor. He would have established a clear case of fraud by an officer of the bank.

In *Coleman* v. *First National Bank of Elmira*, 53 N. Y. 390, the plaintiff received in the bank a certificate of deposit signed

nominally by the president of said bank unofficially. As soon as the plaintiff found that it was not a certificate in proper form to bind the bank, he returned it to the bank and disaffirmed the arrangement as formally made by the certificate, and demanded his money or a proper voucher. This was a clear case of fraud as held by the court.

Upon the assumption aforementioned that the plaintiff had been misled and deceived by Morse, he had the election, I think, to consider the defendant or Morse as his debtor for the money so deposited, but as in all cases of fraud when such right of election exists, he would be bound to act promptly in disaffirming the formal contract with Morse if he sought to hold the bank as the principal debtor.

Judge GROVER states the rule as generally held in such cases, in *Curtiss* v. *Howell*, 39 N. Y. 214, as follows : " It is a settled principle that a party induced to enter into a contract by fraudulent representations has, upon discovery of the fraud, the right, if exercised promptly, of rescinding the contract," etc.

In *Masson* v. *Bovet*, 1 Denio, 74, Judge BEARDSLEY said : " If a party defrauded would disaffirm the contract, he must do so at the earliest practicable moment (and see also *Stevens* v. *Hyde*, 32 Barb. 178, and *Baker* v. *Robbins*, 2 Denio, 138), and before he takes any step in affirmance of it, for this will waive the fraud.

This right of election to disaffirm the contract as to Morse and hold the bank as the principal debtor was not exercised promptly after the discovery by the plaintiff that the pass-book was not given by and did not bind the bank. He did not immediately elect to disaffirm said contract by any step, act or declaration, if he ever did before, or until he signed a check for the balance of his money and interest so deposited with Morse as shown by said pass-book, which check is dated, and was presented and payment demanded thereon, at the defendant's bank, on the 14th day of January, 1873.

In the meantime, during this period, from April, 1868, to January 14, 1873, the plaintiff treated with Morse, and recognized him as his debtor for such deposits ; demanded payment of him, and received two payments from him on such account at different times in response to repeated requests for payment. .

After these repeated acts of affirmance of the contract with Morse, it was too late for the plaintiff to disaffirm the contract

when he drew the check aforesaid in January, 1873. He had lost his right to disaffirm the contract. He had made his election to hold Morse as his debtor, and the election once made, was final and conclusive. *N. Y. Fireman Ins. Co.* v. *Lawrence,* 14 Johns. 46, 55.

This is not like the case of a factor or agent purchasing goods for an unknown principal. In such case generally, it is well settled that the vendor may recover the price of the principal when discovered. *Patem* v. *Gardenger,* 15 East, 45 ; *Pentz* v. *Stanton,* 10 Wend. 271. In such case the principal is liable for the goods, because he has received them and had the benefit of the purchase, and in this class of cases when the vendor, with full knowledge of the facts, elects to hold the agent for the debt, he will be bound by such election, and will have abandoned his right to proceed against the principal. See cases last cited, and also *Addison* v. *Gandassequi,* 4 Taunt. 573 ; *Thomson* v. *Davenport,* 9 Barn. & Cress. 78.

In respect to the exceptions in the case, none of them, I think, are well taken, except the one taken to the charge upon the question of the statute of limitation.

It was not error to admit the pass-book in evidence. It was not such a contract as to preclude parol evidence in regard to all the plaintiff's transactions which tended to bind the bank, or show the conduct of its officer with the plaintiff. That rule only applies as between the parties to a contract, and does not then apply to receipts. *Barry* v. *Ransom,* 12 N. Y. 464; *Ford* v. *Williams,* 21 How. (U. S.) 207.

In respect to the statute of limitation, the judge in his charge said that "This suit was commenced January 14, 1873. Six years previous to that would be January 14, 1867, and here was a credit on the book of interest to April 4, 1867. So that here was an entry made within six years of the time the suit was commenced, and this entry was held by the judge sufficient to take the whole account out of the statute. This credit of $22.49 for interest on the previous entries on debit side in the pass-book, doubtless was an admission of indebtedness by Morse at that point of time of the items of the account, and was equivalent to the payment of interest by him on said items to that amount. But this credit or payment was not made by the defendants. They had received none of these deposits — none of them were credited on their books, and all of the entries relating to these moneys were in the private books of Morse. The entries in this pass-book created and constituted a

contract upon its face between him and the plaintiff, but not as to the bank, and did not bind the bank as matter of contract, and these entries could not charge the bank with an admission of indebtedness or of payment not in fact made by it or payable from its funds. The exception to this part of the charge, therefore, is well taken.

The judgment should, therefore, be reversed and a new trial granted, with costs to abide the event.

*Judgment reversed, and new trial granted.*