Burket, C. J.
The matters and things set up in the answer and cross-petition, and expressly admitted to be true -by the reply, must be regarded as conceded by the parties, and therefore true, notwithstanding the finding of the circuit court to the effect “that the matters and things set up by way of defense in the answer and cross-petition are not true. ”
The case therefore stands the same as if the facts expressly admitted by the reply to be true, had been found by the court in addition to the finding’ as made; and the rights and remedies of the parties must be determined by the terms and conditions of the written instrument and the facts, both as found by the court, and as expressly admitted in the reply.
While the written instrument must be construed in the light of the surrounding circumstances, no new terms or conditions can be injected into such instrument, and no existing terms or conditions can be taken therefrom by averment in a pleading. In Kellogg v. Larkin, 3 Pinney *126 (Wis.,) 123, 56 Am. Dec., 164; it is said: “No averments can give to an agreement character it had not, and no admission can take from it the character it had.” The effort to bend and change the construction of the written instrument in question, by averments in the pleadings, as to its true construction and meaning, must therefore fail, and the instrument must be construed, and its legal effect declared from the language used when read in the light of the surrounding circumstances. The facts found, and those admitted by the reply, are not such as to bend or vary in any respect, the construction or legal effect of the language used in the written instrument, and therefore a consideration of the terms and conditions, and legal effect of the written instrument itself, is all that is required.
It is not claimed by the plaintiff in error, that the oil company is in default as to the one-sixth of the royalty, nor as to the payment for gas, nor as to completing one well within six months, nor as to cash payments for delay. His only complaint is, that the company has failed to drill the number of wells necessary to properly develop the lands and so protect the lines as to prevent wells on adjoining lands from draining the oil from under his lands; and for this alleged default he seeks to forfeit the lease as to so much of the land as has not been sufficiently drilled. What are his rights in this regard under the lease? Is he entitled to the remedy he seeks? These questions are fairly made in the record, and are of great interest to the oil producing, and oil land interests of the state.
There is no express covenant, condition, or agreement, in the lease as to the extent to which *127 the lands should be developed, nor as to the number of wells that should be drilled after completion of the first well. Is there an implied covenant, condition, or agreement, as to such development, or as to the drilling of a reasonable number of wells?
On principle, it would seem that there is such implied covenant in the written instrument. When no time is fixed for the performance of a contract, a reasonable time is implied. When a contract for the erection of a house or other structure, is silent as to the quality of the materials or workmanship, it is implied that the same should be of a reasonable quality. In a lease of a farm for tillage on the shares, it is implied that the tenant shall cultivate the farm in the manner usually done by reasonably good farmers. So under an oil lease which is silent as to the number of wells to be drilled, there is an implied covenant that the lessee shall reasonably develop the lands, and reasonably protect the lines. The development and protection of lines which is thus implied when the lease is silent, is such as is usually found in the same business of an ordinarily prudent man, neither the highest nor lowest, but about medium or average.
We therefore hold, both on principle and authority, that there is an implied covenant in this lease to reasonably develop the lands by drilling and operating such number of wells as would be ordinarily required for the production of the oil contained in such lands, and afford ordinary protection to the lines. Glasgow v. Chartiers Oil Co., 152 Pa. St., 48; Koch’s and Balliet’s Appeal, 93 Pa. St., 434; Mc Knight v. Manuf. N. Gas Co., 146 Pa. St., 185.
*128 The extent of the development, and number of wells to be drilled, and as to the protection of the lines, is often, if not usually, expressed in the lease, and that is certainly the better practice. When the extent of the development and protection of lines is provided for in the lease, there can be no implied covenant for further development and protection of Tines. The implied covenant arises only when the lease is silent on the subject.
There being such implied covenant in this lease, and conceding, but not deciding, that a breach of that covenant is shown by the record, the question arises as to whether such breach works a forfeiture of the lease in whole or in part? And as to whether the plaintiff in error could, by notice to the oil company, secure to himself the right to drill oil wells on the undrilled part of said lands ?
This lease is in its terms, an entire contract without any words of severance; and there is no implication of severance, as is sometimes the case when all wells are to be drilled within a shorter time than the period of the lease. In such cases, even though the lease is in terms a sale of all the oil contained in the lands, whatever oil remains in the undeveloped parts of the land at the expiration of the time in which drilling can be done by the terms of the lease, inheres in the land and lapses into the fee, and remains the property of the land owner, the same as standing trees which are sold to be removed within a given time, remain the property of the owner of the land after the expiration of such time. Clark v. Guest, 54 Ohio St., 298.
In such cases the lease is severable by implication, at the end of the period in which drilling is allowed; but there is nothing in this lease to *129 indicate a severable character, and therefore the rule of law applicable to the breach of conditions of entire contracts, would seem to be applicable here. That rule is, that a condition must defeat or determine the whole estate or contract, to which it is annexed, and not only a part of it, unless otherwise .expressed. 2 Cruise on Real Prop erty, 5.
The case of Masson v. Bovet, 1 Denio, 69; 43 Am. Dec., 651, is authority to the effect that a rescission of a contract must be in toto, or not at all. See also, Trimble v. Doty, 16 Ohio St., 129. The same rule of law applies as to forfeitures of contracts.
■ The rights and remedies of the parties to an oil or gas lease, must he determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms, must govern the rights and remedies of the parties.
By the terms of the lease in this case, the lessor for a valuable consideration granted, demised and let the lands described to the lessee, for the purpose and with the exclusive right of drilling and operating for petroleum oil and gas, for five years, and as much longer as oil and gas are found in paying quantities. In this case, as in the case of Crawford v. Woodland Oil Company, 55 Ohio St., 161, it is the land that is granted demised, and let for the limited purpose and period named in the lease. An instrument in such form is more than a mere license; it is a lease of the land for the purpose and period limited therein, and the lessee *130 has a vested right to the possession of the land to the extent reasonably necessary to perform the terms of the instrument on his part.
In this case, possession .was delivered to the lessee and operations commenced, wells drilled, and oil produced in paying quantities, and in such cases it cannot be doubted that the lessee has a vested, though limited, estate in the lands for the purposes named in the lease. Venture Oil Company v. Fritts, 152 Pa. St., 451.
■ What the exact rights of the parties were after the execution of the lease, and before oil was found in paying quantities,' is now immaterial, because oil was found, and is still being produced in paying quantities; and for the additional reason that the duty imposed by implication upon a lessee in a leasehold operated for gas, can not be measured by the same rule applied in the same manner, as in the case of a leasehold operated for oil; the peculiar characteristics of the business of producing and transporting natural gas being such as to distinguish it for some purposes from operations for oil. McKnight v. Manufacturers N. Gas Co., 146 Pa. St., 185.
While the period of five years that the lease was to run has expired, the lease is still in full force, because it provides that it shall continue as much longer as oil and gas are found in paying quantities. This provision extends and limits the period of the lease to such time in the future, as oil and gas shall cease to be produced in paying-quantities on said lands. When that period shall arrive, whether caused by exhausting the oil and gas, or by the permanent abandonment of production, the lease will cease, and the whole estate in the premises will become the property of *131 the • owner of the fee, not by forfeiture, but by virtue of the terms of the lease.
A breach of the implied covenant to reasonably develop and protect lines, does not have the effect to forfeit the lease in whole or in part, nor is it good cause for a court to declare such forfeiture, unless the lease in express terms provides that a breach of such implied covenant shall avoid or forfeit the lease. Koch’s and Balliet’s Appeal, 93 Pa. St., 434; McKnight v. Kreutz, 51 Pa. St., 232; Janes v. Emery Oil Co., 1 Pa. S. C. Reports by Pennypacker, 242; Blair v. Peck, Ib., 247; Paschall v. Passmore, 15 Pa. St., 295.
It is strongly urged, that it is inequitable for the lessee to hold on to his lease and still fail to so operate the premises as to produce reasonable results, and that he should either reasonably operate the premises or get off and permit his lease to be forfeited. The answer is, that while there is an implied covenant to reasonably operate the premises, there is no implied or express covenant to get off and forfeit his lease for a breach of such covenant.
The lease in question provides for a forfeiture for the failure to comply with the conditions, or to pay the cash consideration in the lease mentioned, at the time and in the manner agreed; but the implied covenant, to reasonably operate the premises, is not mentioned in the lease, and is therefore not included in the causes of forfeiture. Some causes of forfeiture being expressly mentioned, none other can be implied. McKnight v. Kreutz, 51 Pa. St., 232.
The remedy for a breach of the implied covenant to reasonably operate the premises, is therefore not by way of a forfeiture of the lease in *132 whole or in part, but must be sought in a proper action for a breach of such covenant. Blair v. Peck, 1 Pennypacker, 247.
As to the rule of damages in such cases, see Bradford Oil Company v. Blair, 113 Pa. St., 83.

Judgment affirmed.