(97 App. Div. 147.)

### DALY v. REINELDT et al.

(Supreme Court, Appellate Division, Second Department. July 28, 1904.)

1. MORTGAGES—FRAUD OF ATTORNEY—WAIVER—LACHES.

> Where, within three or four months after the execution of a purchase-money mortgage sought to be foreclosed, the mortgagor acquired knowledge that the mortgage had been fraudulently taken for the sole benefit of his attorney, who represented him in the purchase of the property, but, with such knowledge, he failed to disaffirm the contract for more than a year, during which time he paid interest on the mortgage, he thereby waived the fraud, as against a bona fide purchaser of such mortgage.

Appeal from Special Term, Westchester County.

Action by John W. Daly against Paul F. Reineldt and others. From a judgment in favor of defendants, plaintiff appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

John M. Digney, for appellant.
George M. S. Schulz, for respondents.

HOOKER, J. This action is brought to foreclose a purchase-money mortgage for $7,500. The defendants Reineldt allege that the mortgage was obtained by plaintiff's assignor by fraud, and demand judg-

ment that it be delivered up and canceled. They were successful at Special Term, and plaintiff appeals from the judgment against him.

Accepting the testimony of the defendants as true, and dealing with the questions upon their theory of the original transaction, it appears that one Griffin, an attorney who had had some legal business for Paul Reineldt, sent for him, and told him that Nowill, the owner of the property in question, was willing to sell, and he could obtain it for Reineldt for $40,000; that the defendant demurred to the price, and later Griffin said Nowill would accept $37,500, whereupon the defendant agreed to purchase, retaining Griffin as his attorney to make search for him, examine the title, and take care of the transfer and the giving back of the mortgages. The deal was consummated on September 13, 1899. A $16,000 mortgage given to Nowill by defendants was part of the purchase price. The $7,500 subsequent mortgage, in suit, was given to Backus, a dummy for Griffin, and was also as part of the purchase price. Until the assignment to the plaintiff, Griffin exercised ownership over that mortgage. These two purchase-money mortgages were assigned to the plaintiff on January 14, 1902. The interest on the mortgage in suit was paid regularly by Reineldt every six months from the time it was given, up to the purchase by the plaintiff.

The learned Special Term has found that a relation of trust and confidence existed between Reineldt and Griffin, that the latter held the position of agent or attorney for the former, and that the transaction was fraudulent. The testimony of Reineldt, however, shows that, within a short time after the execution of the mortgage, he was put in full possession of the facts upon which he seeks to predicate fraud. Nowill received, of the purchase price, from Reineldt, through Griffin, $30,000, and Griffin kept for himself the $7,500 mortgage. Within three or four months subsequent to the execution of the mortgage, Ford, a real estate agent, in whose hands Nowill had placed the property, informed Reineldt that he could have purchased the property for $31,000. This was before any interest on the mortgage in suit became due. Immediately following that, Reineldt had a conversation with Nowill himself, in which the latter told him he had placed it in the hands of a real estate agent for that price. In the year 1900—on what day does not clearly appear—Reineldt learned from Nowill that the latter received but $30,000 from Mr. Griffin. The conclusion was irresistible, therefore, that Griffin had pocketed the balance, and then Reineldt possessed full knowledge of the facts upon which he has on the trial of this action established the fraud. Reineldt also testified that within six months after the execution of the mortgage he knew that Griffin retained the purchase-money mortgage for $7,500 for himself, and had profited that much by the transaction, and said upon the stand that after learning that Griffin had defrauded him of this money, and knowing he held the mortgage of $7,500, which he declared in his pleading to be a fraud, still for a period of two years he paid the interest upon that mortgage without any objection. Payments of interest, as appears by the record, were made in March and September, 1900, and in April and October, 1901. No reason appears why Reineldt should not at once have disaffirmed the contract, or at least have ceased paying the interest on the mortgage, upon his learning of the fraud. His only

explanation is that he took about a year to think it over.    During this year he kept on paying the interest.

We think it clear, under these facts, that the defendant has reaffirmed his contract of mortgage.    The duty rests upon one who claims to have been defrauded to rescind the contract, and such rescission must be exercised immediately upon discovery of the fraud.    Delay in this has been repeatedly declared to effect an affirmance of the contract.    Hallahan v. Webber, 7 App. Div. 122, 40 N. Y. Supp. 103.    In that case Presiding Justice Van Brunt, writing for the court, said:

"In the cases of Masson v. Bovet, 1 Denio, 69, 43 Am. Dec. 651; Cobb v. Hatfield, 46 N. Y. 533; Hammond v. Pennock, 61 N. Y. 145; Schiffer v. Dietz, 83 N. Y. 300; Strong v. Strong, 102 N. Y. 69, 5 N. E. 799, and many other cases which might be cited, it is stated that it is a settled rule that the right to rescind a contract for fraud must be exercised immediately upon its discovery, and that any delay in doing so will be deemed an election to affirm the contract."

Reineldt, under the rule announced in these cases, should not be permitted, after he discovered the fraud, to take a year or more to think it over, all the while paying interest, and now seek to defeat foreclosure by the plaintiff, who, so far as appears, is a bona fide purchaser of the mortgage.    The judgment should therefore be reversed, and a new trial granted.

Judgment reversed and new trial granted; costs to abide the event. All concur.