WHEATON and others *vs*. BAKER.

He who has been induced to part with his property on a fraudulent contract may, on discovering the fraud, avoid the contract and claim a return of his property. Fraud destroys the contract, and the fraudulent purchaser acquires no title.

A party who would disaffirm a fraudulent contract, must act promptly, upon discovering the fraud, and he must return or offer to return whatever he has received upon it. He cannot retain what he has received, if it is of any value, and proceed to recover the property fraudulently purchased of him. He must rescind the contract *in toto*, and thus place the party in the position he was in before the sale.

Where the plaintiff sold to J. a quantity of stoves, and received in payment two notes made by M., for a part of the amount, and the note of J. for the balance of the purchase money, and J. subsequently sold a part of the stoves to bona fide purchasers, and the defendant became the purchaser of the remainder; and the plaintiffs then applied to M. and obtained from him four additional notes made by him, for a part of the purchase money, and prosecuted two of them to judgment; and after demanding the stoves of the defendant, they brought an action to recover the possession thereof, on the ground that the purchase by J. was *fraudulent*, but without rescinding the contract, or returning, or offering to return, the note given by J., or those given by M.; *Held* that the action could not be maintained.

ACTION to recover the possession of personal property. The plaintiffs, on the 16th August, 1850, sold to one Zebina Judd 166 stoves, and a quantity of hollow ware pertaining to the stoves. The purchase amounted to $2082,66. Judd, at the time of the purchase delivered to the plaintiffs two business notes made by one James H. Mather, one dated June 11, 1850, and amounting then to $1112,83, the other dated November 11, 1849, amounting to $218,25, and upon which interest was allowed for six months, $46,58, and Judd gave his own note to balance the account, for $704,25. Judd disposed of 66 of the stoves, in the course of his business, to bona fide purchasers. About the middle of October, 1850, Judd failed, and made an assignment. The plaintiffs had notice of the failure, and of proceedings being instituted against him for a fraudulent disposal of his property under the non-imprisonment act, by some of his creditors. The assignment was finally abandoned and the stoves restored to Judd, who then sold them to the defendant and others, in payment of debts owing

Wheaton v. Baker.

to them, and the defendant by purchase acquired the title of his co-purchasers. The plaintiffs, about the 15th November, 1850, demanded the property of the defendant, who refused to deliver, and the plaintiffs, on the 27th of Nov. commenced this action. Evidence was given upon the trial, tending to show that the sale to Judd was made by the plaintiffs under fraudulent representations from Judd of his circumstances; also that the defendant, at the time he purchased, had a knowledge of the circumstances under which Judd purchased. Judd, soon after his failure, left the state, and when this suit was commenced resided in Massachusetts. Evidence was given by the defendant tending to show that at the time Judd made the assignment Mather was solvent; also that Judd was solvent, or had sufficient property to pay all his debts.

In December, 1850, the plaintiffs received from Mather his four notes, amounting to $1332, payable at bank at different times, the first Feb. 1, 1851, and the last Sept. 1, 1851. They also acknowledged to have received from Mather two other notes as collateral to the four notes; one of $207,85, dated November 17, 1848, and the other of $1100, dated June 11, 1850—the same notes received by the plaintiffs from Judd, upon the sale of the stoves to Judd. The defendant gave in evidence, under objection and exception, the record of a judgment in the supreme court in favor of the plaintiffs against Mather upon the two first of the four notes payable at bank. The judgment was docketed June 6, 1851. There was no evidence of any offer by the plaintiffs to return the notes received from Judd upon the sale of the stoves.

The defendant's counsel asked the court to direct the jury to find a verdict for the defendant, upon the ground that the plaintiffs could not recover without showing a return, or an offer to return the Mather notes, received of Judd on the sale; that the dealings between the plaintiffs and Mather, after they were apprised of Judd's failure, and taking new notes changing the time of payment, and then prosecuting two of those notes to judgment, was—unexplained—an affirmance of the sale. Other grounds were also stated. The plaintiffs' counsel insisted that

the question of the return of the Mather notes, was a question with which the defendant had no concern, and that it was immaterial what had been done between the plaintiffs and Mather. Also that the transactions between the plaintiffs and Mather were after the commencement of the suit, and were therefore no defense. That Judd having disposed of a large part of the property, the plaintiff had a right to retain the Mather notes for indemnity, and could only be required by Judd or his creditors to account for any which might eventually remain in their hands. That at all events their dealings with the Mather notes were only evidence to go to the jury upon the question of their affirmance of the sale, and were not conclusive in law and *per se* an affirmance of it so as to defeat this action. The judge remarked that there did not appear to be any conflict in the evidence, and that he did not think the plaintiffs could maintain this action and at the same time retain the notes and exercise acts of ownership over them. He proceeded to explain the law to the jury, and directed a verdict for the defendant, and the plaintiffs excepted. The plaintiffs moved for a new trial, upon a bill of exceptions.

*C. B. Sedgwick*, for the plaintiffs, cited *Masson* v *Bovet*, (1 *Denio*, 69 ;) *Ladd* v. *Moore*, (3 *Sandf. Sup. C. Rep.* 589 ;) *Thurston* v. *Blanchard*, (22 *Pick.* 18 ;) *Nellis* v. *Bradley*, (1 *Sandf. S. C. Rep.* 560 ;) *Baker* v. *Robbins*, (2 *Denio*, 136 ;) *Willson* v. *Foree*, (6 *John.* 110 ;) *Pierce* v. *Drake*, (15 *Id.* 475 ;) *Colville* v. *Besly*, (2 *Denio*, 139 ;) *Cary* v. *Hotailing*, (1 *Hill*, 311 ;) *Ash* v. *Putnam*, (*Id.* 302 ;) *Root* v. *French*, (13 *Wend.* 570 ;) *Mowrey* v. *Walsh*, (8 *Cowen*, 238, 9;) *Browning* v. *Bancroft*, (8 *Met.* 278 ;) *Green* v. *Russell*, (5 *Hill*, 183 ;) *Stevens* v. *Austin*, (1 *Met.* 557.)

*M. Burnell and F. S. Edwards*, for the defendant, cited *Hogan* v. *Shorb*, (24 *Wend.* 460, 1 ;) *Masson* v. *Bovet*, (1 *Den.* 69 ;) *Staats* v. *Howlett*, (4 *Id.* 554, 559 ;) *McNeven* v. *Livingston*, (17 *John.* 437 ;) 3 *John. Ch.* 23 ; 12 *Verm.* 27 ; 2 *Green. Ev.* 495, 6, 7 ; *Burton* v. *Stewart*, (3 *Wend.* 236 ;) *Floyd* v. *Brewster*, (4 *Paige*, 537 ;) 1 *Adol. & Ellis*, 40 ; *Brinley* v.

Wheaton *v.* Baker.

*Tibbets,* (7 *Greenl.* 70 ;) *Flagg* v. *Dryden,* (7 *Pick.* 52 ;) *Colville* v. *Besly,* (2 *Denio,* 139 ;) *Hogan* v. *Weyer,* (5 *Hill,* 390 ;) *Moyer* v. *Shoemaker,* (5 *Barb.* 319 ;) *Sprague* v. *Blake,* (20 *Wend.* 64 ;) *Voorhees* v. *Earl,* (2 *Hill,* 288 ;) *Story on Cont.* § 497 ; *Conner* v. *Henderson,* (15 *Mass. Rep.* 319.)

*By the Court,* MARVIN, J. He who has been induced to part with his property on a fraudulent contract, may, on disclaiming the fraud, avoid the contract and claim a return of his property. Fraud destroys the contract, and the fraudulent purchaser acquires no title. A party who would disaffirm a fraudulent contract must act promptly, upon discovering the fraud, and he must return or offer to return whatever he has received upon it. He cannot retain what he has received, if it is of any value, and proceed to recover the property fraudulently purchased of him. He must rescind the contract *in toto,* and thus place the party in the position he was in before the sale. That such are the general principles governing this class of cases will be seen by reference to a few of the adjudged cases. (*Masson* v. *Bovet,* 1 *Denio,* 69. *Cary* v. *Hotailing,* 1 *Hill,* 311. *Ash* v. *Putnam,* 1 *Id.* 302. *Root* v. *French,* 13 *Wend.* 571. *Voorhees* v. *Earl,* 2 *Hill,* 288. *Baker* v. *Robins,* 2 *Denio,* 186. *Hogan* v. *Weyer,* 5 *Hill,* 390. *Moyer* v. *Shoemaker,* 5 *Barb.* 322, 3. *Kimball* v. *Cunningham,* 4 *Mass. Rep.* 502. *Conner* v. *Henderson,* 15 *Id.* 319. *Coolidge* v. *Bingham,* 1 *Met.* 547.)

In the present case, the plaintiffs, upon the sale of the stoves, received from Judd notes made by Mather amounting to over $1300, and Judd's note for over $700. They were informed of the failure of Judd, and that his creditors were prosecuting him for a fraudulent disposal of his proserty. This was about the middle of October. The plaintiffs took no action until the middle of November, when they demanded the stoves, &c. of the defendant, who, in the mean time, had purchased them. Soon after this they commenced this action, to recover possession of the stoves. They did not return or offer to return the Mather notes, received upon the sale to Judd, nor the notes taken of Judd; but on the contrary, soon after commencing this suit, they ap-

plied to Mather and obtained from him additional notes payable at bank, and afterwards prosecuted two of those notes to judg-ment. It is now claimed that the plaintiffs had the right to re-tain the notes and make collections to indemnify themselves for the property which had been sold by Judd to his customers, and at the same time rescind the contract and take the stoves not sold. No case was cited upon the argument which sustains this proposition.

In *Masson* v. *Bovet*, (1 *Denio*, 69,) the defendant by fraud in-duced the plaintiff to purchase land at a sheriff's sale, upon a judgment in favor of the defendant. The plaintiff paid the de-fendant the bid, in the note of a third person, amounting to more than the bid, and received the defendant's note for the difference. He also took the sheriff's certificate of sale to himself. Upon discovering the fraud he at once offered to assign the sheriff's certificate to the defendant and to return to him his note. The action was replevin, for the note, and it was sustained. The plaintiff promptly rescinded the contract, and did all in his power to restore the defendant to the position he occupied before the contract. The defendant had by his fraud so entangled and complicated the subject of the contract as to render it impossible that he should be restored to his former condition, and for this reason, as the plaintiff had done all in his power, he was entitled to maintain the action.

In *Ladd* v. *Moore*, (3 *Sandf.* 589,) the defendant purchased fraudulently of the plaintiff some silver ware, and paid for it partly in cash and partly in his own note. On discovering the fraud, the plaintiff searched for the defendant, and not finding him, brought his action of trover. It was held that it was suffi-cient to surrender the note on the trial, and that he was entitled to recover the value of the property, deducting the amount of the money paid. The general rule, that it is necessary for the party rescinding a contract to return whatever he has received upon it, was recognized, with the qualification that it is upon condition that the party returning shall restore himself to his original condition. The action was trover; the plaintiff surren-dered the note on the trial, and in that action damages only

were to be recovered. There was no difficulty in adjusting the amount and abating the sum which the plaintiff had received in money, upon the sale.

The case was very different in its circumstances from the case under consideration. The court probably regarded the circumstances as not being inconsistent with the position that the plaintiff intended to and did rescind the contract *in toto*.

In *Thurston* v. *Blanchard*, (22 *Pick*. 18,) the action was trover, by the vendor, against the fraudulent vendee, who had given his negotiable note. The plaintiff, previous to the action, had not made any demand for the goods, nor had he offered to surrender the note. Upon the trial, however, he produced the note and offered to give it up. It was held that as it appeared that the plaintiff had not negotiated the note, a delivery of it upon the trial was sufficient.

*Browning* v. *Bancroft*, (8 *Met*. 278,) proceeded upon an entire rescission of the contract. The vendee had sold a part of the goods and the vendor brought an action for money had and received, to recover from the vendee the amount received by him for the goods he had sold, and also an action of replevin against an officer who had attached the goods, for the goods remaining unsold. This was entirely consistent with a total rescission of the contract. As the vendor could have brought trover for the goods, he could waive the tort and sue for the money received by the wrongdoer upon a sale of them.

It is also argued by the plaintiff's counsel, that whatever may be the rule between vendor and vendee, the defendant in this action cannot make the objection that the notes were not returned to Judd. That the question can only arise between the plaintiffs and Judd; and *Stevens* v. *Austin*, (1 *Met*. 557,) and *Nellis* v. *Bradley*, (1 *Sandf*. 560,) are cited in support of the proposition. In *Stevens* v. *Austin* the action was trover. The defendant purchased the property *with notice*, of the fraudulent vendee, who upon the purchase from the plaintiff gave his own note, some money, and a bill issued by a bank. The plaintiff on the trial produced the note, cash and bank bill, and offered to leave them on the files of the court, for the use of his vendee. The

position taken by the defendant, at the trial, was that the plaintiff could not maintain the action without showing that he had restored, or offered to restore, the note, cash and bank bill, before the commencement of the action. This position was overruled. The plaintiff recovered, and the ruling upon the trial was sustained in banc, and the court say, " the plaintiff was not bound to tender back the note and money before he could bring his action ; not to the defendant, for the plaintiff had received nothing of him." And it is added, " nor could the defendant raise the question whether the plaintiff had made restitution to his vendee or not. It was *res inter alios,* with which the defendant had no concern, and was wholly irrelevant to the issue between the parties." The concluding remarks were not necessary to the decision. The court had held in *Thurston* v. *Blanchard,* above cited, that it was not necessary in an action by the vendor against the fraudulent vendee, to demand the property or to return the note, before suit; that the note could be surrendered upon the trial. *Stevens* v. *Austin* rested upon the same principles, and the plaintiff did, upon the trial, offer to do what was equivalent to a surrender of the note and money. No doubt was left upon the question of rescission of the contract, and that is the important question in all the cases ; and the party who claims rights resting upon the rescission must show facts establishing the rescission of the contract. In *Nellis* v. *Bradley,* (1 *Sand.* 560,) the party claiming under a rescission of the contract had a verdict. He had omitted to produce and tender the note at the trial, and he was permitted to produce and surrender the note upon the argument in banc, and retain his verdict. These cases do not militate against the general rule that the party who seeks to rescind the contract must restore what he has received.

The plaintiffs also insist that the question of the rescission of the contract or affirmance of the sale should have been submitted to the jury, and *Browning* v. *Bancroft,* (8 *Met.* 278,) and *Green* v. *Russell,* (5 *Hill,* 183,) are cited.

It is a general rule, that where there is no dispute about the *facts bearing directly upon the issue,* the case presents a question of law to be decided by the court ; and where the evidence

Wheaton *v.* Baker.

is so decisive and preponderating that the court, in case the jury should find a verdict against it, would set their verdict aside, the court may direct a verdict, and it will not for this cause be set aside. In the present case there was no dispute about the facts, and those facts proved that the plaintiffs not only did not attempt to rescind the contract, as the law requires, but they, by their acts, affirmed it. They did no act evincing an intention to rescind, except demanding the property of the defendant a month after they were apprised of the failure of Judd; the defendant having purchased the property some time after the plaintiffs were notified of the failure ; and then bringing this suit. At the same time they retained the note given by Judd and the notes they received from Judd against Mather, and subsequently took active measures to collect the demands against Mather. Had a jury, under these circumstances, rendered a verdict for the plaintiffs, the court would have set the verdict aside. The acts of the plaintiffs were inconsistent. They could not proceed as upon a disaffirmance of the contract, and at the same time avail themselves of the contract, by retaining and attempting to collect the notes received upon the sale of the property. (*See cases first above cited, and Whitney* v. *Allaire,* 4 *Denio,* 554; *Hogan* v. *Shorb,* 24 *Wend.* 460 ; *Floyd* v. *Brewster,* 4 *Paige,* 537.)

The case of *Green* v. *Russell,* (5 *Hill,* 183,) cited by the plaintiffs' counsel, was peculiar, and under the circumstances there stated, the court held that the evidence tending to show an acquiescence in and confirmation of the sale, after full notice of the fraud, should have been submitted to the jury, like all other material evidence relating to a disputed fact in the case. In the present case there was no disputed fact, the evidence was decisive, and the direction of the judge was correct. A new trial should be denied.

[NIAGARA GENERAL TERM, February 7, 1853. *Taggart, Marvin* and *Mullett,* Justices.]