### JOHN BYARD v. HUGH HOLMES.

1. Where a party has paid money on a contract entered into through a fraudulent misrepresentation, he may maintain an action for deceit against the person guilty of fraud; or, he may waive the fraud and proceed for a breach of the original contract; or, having legally rescinded the contract, he may, in an action of *assumpsit*, recover back whatever he has paid upon it.

2. When the suit is on the ground of a rescission of the contract, the plaintiff must show that the contract on which the money was paid, has, in legal effect, ceased to exist.

3. Proof of fraud or misrepresentation does not, of itself render a contract void, but voidable only, at the option of the innocent party; and the party must show not only the right to rescind, but that the contract has been, in fact, rescinded.

4. A party seeking to rescind a contract, must put the opposite party *in statu quo*, so far as he is able to do it, and as soon as practicable after discovery of the fraud. As long as he retains any thing received under the contract, and which he might have returned, there can be no rescission.

5. The rescission must be before suit brought.

In case. On rule to show cause, &c.

The declaration in this case contained only the common counts in *assumpsit*, for goods sold, work and labor done, money lent and advanced, money had and received, for interest and on account stated.

The following bill of particulars was furnished by the plaintiff:

Hugh Holmes to John Byard,                                    Dr.

Nov. 30, 1864. To money had and received by the
defendant from the plaintiff, for the use of plaintiff,   $1000
Dec. 1, 1864. To money had and received by the de-
fendant from the plaintiff, for the use of plaintiff,        500
                                                          _____
                                                            $1500

For which amount, with interest, plaintiff claims judgment.

The above plaintiff will show before the court, and insist, that the above sum of fifteen hundred dollars was obtained from him by the said defendant during the latter part of the year A. D. 1864, under false and fraudulent pretences, to wit, that the defendant was the owner of a tract of land, situate on Oil creek, at McClintocksville, Pennsylvania, or elsewhere, consisting of seventy acres, or thereabouts; that he had purchased the said land, and that the title was in him, the said defendant; that large gains and profits would be realized by boring for oil on said tract; that he, the said defendant, was organizing, or about to organize, an oil company, with a capital of seventy-five thousand dollars, or some other sum;

which company should become the owner of the said tract, and the defendant thereby induced the said plaintiff to take stock in the said supposed company, to the said amount of fifteen hundred dollars; which same fifteen hundred dollars is the same sought to be recovered in this action. And the plaintiff now insists, and will insist before the court, that the said representations and pretences of the said defendant were false; but that at the time they were made, this plaintiff, relying upon the truth of said representations, gave to the defendant the said sum above mentioned, in two payments, by his checks to the defendant's order, on the First National Bank of Paterson, at the dates and for the amounts herein first stated.

Defendant pleaded the general issue.

The cause was tried at the Passaic Circuit, before his Honor Justice BEDLE, and the jury rendered a verdict for the plaintiff for fifteen hundred dollars.

The defendant applied for and obtained a rule to show cause why the verdict should not be set aside and a new trial granted.

The case was heard before the CHIEF JUSTICE, and Justices ELMER, VREDENBURGH and WOODHULL.

C. Parker, with whom was T. Runyon, for the rule.

I. Assumpsit will not lie in this case.

The action is clearly for deceit; there is no sort of warranty.

Money was paid in exchange for chattels.

If there was a warranty, and that broken, assumpsit would lie. But if no warranty, the rule caveat emptor applies, unless there was deceit. If deceit, the action must be case.

The case is much stronger here, where money, although paid to Holmes, was paid to him as the trustee for a company, to get shares of stock. Chandelor v. Lopus, 1 Smith L. C. 238 and 253; 2 Cro. 2.

There are cases where money is obtained by fraud, in

which suit may be brought for money had and received. In these cases the fraud amounts to larceny, or the obtaining money without authority. See cases in 2 *Saund. Pl. and Ev.* 384.

And to sustain action for such deceit, plaintiff must aver and prove a *scienter.* 2 *Chitty Pl.* 687, *and note; Ib.* 680, *and note.*

This objection is fatal. No amendment is possible now, because the case was tried all through, and submitted to the jury in this regard.

The court said in charging the jury, " that it is not material in the case whether *defendant had any actual intention to deceive or not."*

At one time the court seemed to regard the case as one of a deposit with defendant of fifteen hundred dollars, to be used in buying shares of a company to be constituted on a basis of seventy acres, and that defendant did not so use it.

This theory is inapplicable. Defendant made no agreement as to any future application of money. He took the money as the price of so many shares of stock in a certain company, and if he is liable at all, it is because he falsified the qualities of the article sold. He was no agent or depositary.

II. The bill of particulars exhibited a case of deceit, but one which showed *no damage,* for it did not aver that the stock was worthless.

III. The plaintiff took the stock—almost immediately learned the falsity of the allegation set up as the inducing cause of this investment—actually saw the property in two or three months, yet made no complaint until February, 1866, the stock in the mean time, having been worth one hundred per cent. advance.

This holding on to the fruits of the contract, bars subsequent suit. *Campbell* v. *Fleming,* 1 *Ad. & Ell.* 40 ; *Wontner* v. *Scott,* 4 *Man., Grang. & Scott* 404; *Shrewsbury* v. *Blount,* 2 *Man. & Gr.* 470.

What is a reasonable time is a question of law, and two

and a half months is too long. *Wheaton* v. *Baker*, 14 *Barb.* 594 ; *Atwood* v. *Clark*, 2 *Greenl.* 249 ; *Holbrook* v. *Burt*, 22 *Pick.* 540 ; *Cook* v. *Gilman*, 34 *N. H.* 556 ; *Masson* v. *Bovet*, 1 *Denio* 69 ; *Baker* v. *Robbins*, 2 *Denio* 136 ; *Fisher* v. *Conant*, 3 *E. D. Smith* 199 ; *Meyer* v. *Shoemaker*, 5 *Barb.* 322.

IV. Admission of illegal evidence.

What could one hundred and fifty shares of stock have been sold for in market, up to August, 1865 ?

The question not admissible.

*S. Tuttle*, contra.

WOODHULL, J. This was an action of *assumpsit* to recover back fifteen hundred dollars paid by the plaintiff to the defendant, November 30th and December 1st, 1864, for stock in a company about to be organized to be called "The New Jersey Petroleum Company."

The declaration contained only the common counts, with a bill of particulars annexed, setting forth the circumstances of the transaction between the plaintiff and the defendant, and alleging, in substance, that the defendant had induced the plaintiff to pay the fifteen hundred dollars by fraudulently representing that the said company, when organized, would own about seventy acres of oil land, when, in fact, it never owned, and was never expected to own, more than about three and a half acres of such land.

The plea was the general issue ; and the plaintiff obtained a verdict at the Passaic Circuit, December Term, 1866, for the whole amount of his claim.

It appeared at the trial, that the plaintiff paid the fifteen hundred dollars to the defendant as alleged, and that the defendant paid it over without delay to the treasurer of the company.

The company was not formally organized until December 7th, 1864, and the plaintiff having received from the defendant, January 5th, 1865, a certificate for one hundred and

fifty shares in the capital stock of the said company, continued to hold the same without any offer to return it to the defendant until such offer was made at the trial of the cause, and there was no evidence in the case to warrant the inference that the stock in question was at any time totally without value.

It appeared further, that the plaintiff had information as to the quantity of land owned by the company, probably within two or three weeks, certainly within three months, after he received his certificate; that as early as October, 1865, he personally examined the property in question and knew all about it; and that the first complaint made to the defendant of any misrepresentation, was contained in a letter addressed to him by the plaintiff, February 12th, 1866, the same letter containing also the first and only notice to him that the plaintiff intended to rescind the original contract, and hold him responsible for the money which had been paid upon it.

1. The first reason relied on for setting aside this verdict, was that the plaintiff could not maintain the action, because the facts set forth in the bill of particulars show a cause of action for which the proper remedy was an action on the case for deceit, and that proof of these facts was improperly admitted at the trial.

Admitting that, upon the facts stated, the plaintiff might have maintained an action on the case for deceit, it by no means follows that he was restricted to that remedy.

He may unquestionably, in such a case, waive the fraud, and proceed for a breach of the original contract; or, having legally rescinded that contract, he may, in an action like the present, recover back whatever he has paid upon it. Now this last course appears to be precisely the one which the plaintiff intended to adopt.

So long as the original contract remained in force, no implied contract could possibly arise, binding the defendant to pay back to the plaintiff the money claimed in this suit. The plaintiff, therefore, could not maintain this action without

showing that the contract on which the money was paid had, in legal effect, ceased to exist. This essential preliminary fact the plaintiff proposed to establish in part, by proving such fraud in the transaction as would entitle him, at his option, to avoid it altogether; and for this purpose, certainly, the facts set forth in his bill of particulars were pertinent and material, and were properly admitted to be proved in this action.

It was further insisted on the part of the defendant, that the verdict was against the weight of evidence, both as to the right to rescind and as to the actual rescission of the original contract.

2. Does it appear that the plaintiff had the right to rescind?

If the alleged misrepresentation as to the quantity of land owned by the company was, in fact, made by the defendant in the manner and with the effect alleged by the plaintiff, it was unquestionably such a fraud as would entitle him, at his option, to avoid the contract, notwithstanding that he might not be able to put the defendant in precisely the same condition that he was in before the contract was made. Even if not fraudulent, such misrepresentation would give one who had relied upon it the right to rescind, provided the other party could be placed in all respects *in statu quo.*

Professor Parsons thus states the law upon this point: " Material misrepresentations, which go to the substance of a contract, avoid that contract, whether they are caused by mistake, and occur wholly without fault, or are designed and fraudulent." 2 *Par. on Con.* 786. That the learned author is not to be understood here as holding that such a misrepresentation will render a contract *ipso facto* void, is clear from what he had just said when speaking of the effect of fraud upon a contract. " Cases often say," he remarks, " that fraud makes a contract *absolutely void*, but by this it cannot be meant that the innocent party cannot waive the fraud and insist upon the contract." 2 *Pars. on Con.* 782. And that

the law is as here indicated, there can be no doubt. Fraud in a contract does not of itself and necessarily, make the contract void, but only voidable at the option of the innocent and injured party. *Meyer* v. *Shoemaker*, 5 *Barb*. 319; *Wheaton* v. *Baker*, 14 *Barb*. 594; 2 *Kent's Com*. 480, *and cases there cited*, (2d ed. ;) 2 *Pars. on Con*. 680, (*note ;*) *Masson* v. *Bovet*, 1 *Denio* 69; *Baker* v. *Robbins*, 2 *Denio* 136.

In the present case there can be no question that the alleged misrepresentation, if made at all, was fraudulent; for the defendant testifies that he knew from the first that the company neither owned, nor was expected to own, more than three or four acres of land. Proof of the misrepresentation, then, would seem to carry with it, necessarily, proof of fraud; and to determine whether the plaintiff had a right to rescind as for fraud, the jury had simply to inquire whether the defendant did in fact represent that the company owned about seventy acres of oil land. They have found, as their verdict shows, that he did make such representation; and without undertaking to examine in detail the very contradictory testimony given on the trial, the conclusion to which I have come is that while the evidence, on the whole, might well have justified a different finding as to the alleged misrepresentation, the verdict, so far as that part of the case is concerned, is not so clearly against the weight of evidence that it ought, for that reason alone, to be set aside.

3. Assuming that the plaintiff had a right to rescind, it remains to be considered whether there was evidence in the case to justify the jury in finding that he had, in fact, rescinded the original contract. On the argument in support of the verdict, it seemed to be taken for granted, that proving the contract fraudulent was the same thing as proving it utterly void, and therefore equivalent to proof of an actual rescission. But, as has been already shown, it is well settled that fraud does not of itself, make a contract void, but only furnishes a legal ground for avoiding it, at the option of the injured party. And it appears to be equally well settled,

that while it is true that a contract may be avoided for dis-covered fraud, although the fraud-doer cannot be put *in statu quo*, still so far as this can be done the other party is bound to do it, and to do it as soon as practicable after the discovery of the fraud; and that there can be no rescission so long as he retains anything received under the contract, which he might have returned, and the withholding of which might be injurious to the other party. *Campbell* v. *Fleming*, 1 *Ad. & E.* 40; *Cook* v. *Gilman*, 34 *N. H.* 556; *Masson* v. *Bovet*, 1 *Denio* 69; *Cushing* v. *Wyman*, 38 *Mi.* 589; *Evans* v. *Gale*, 1 *Foster* 240; *Norton* v. *Young*, 3 *Greenl.* 30; *Sheppard* v. *Temper*, 3 *N. H.* 455; *Baker* v. *Robbins*, 2 *Denio* 136; *Meyer* v. *Shoemaker*, 5 *Barb.* 319; *Wheaton* v. *Baker*, 14 *Barb.* 594; 2 *Kent's Com.* 480; 2 *Parsons on Con.* 680, *note*.

In *Cook* v. *Gilman*, Perley, C. J., delivering the opinion of the court, says: "This general rule, that the party who would recover back, on the ground of fraud, what he had parted with under a contract, must seasonably, and before he brings his suit, return, or offer to return, whatever he has received under the contract, is extremely well estab-lished on authority, and may be regarded as fundamental and elementary." See many additional cases there cited.

In *Masson* v. *Bovet*, Beardsley, J., states the rule and the reason of it thus: "The party defrauded, if he would re-scind the contract, must return, or offer to return, everything he received in execution of it. To retain the whole, or a part only of what was received upon the contract, is incom-patible with its rescission, and hence the necessity of restor-ing what had been received upon it."

Applying these doctrines to the present case, it is clear that when this suit was commenced, there had been no re-scission at all of the original contract; for the plaintiff had neither, at that time, returned the certificate of stock, nor had he offered to return it, nor even given to the defendant any notice or intimation that he intended to do so. The offer to return the certificate at the trial was not sufficient

to effect a rescission of the contract because it was not made within a reasonable time after the alleged discovery of the fraud.    And even if sufficient, a rescission at that time could avail the plaintiff nothing in this suit.

The verdict must be set aside, and a new trial granted.