FRANK KINNEY, Appellant, *v.* JAMES KIERNAN et al., Respondents.

After a contract of sale has been rightfully rescinded by the vendor on account of fraud on the part of the vendee, the contract is at an end, and no act on the part of the vendor alone can revive it.

Consequently, after such a rescission, an action by the vendor against the vendee upon the contract of sale is not maintainable. And the bringing of such an action will not (without judgment therein) revive the contract of sale so as to constitute a bar to an action for conversion previously brought by the vendor against a third party, who had received a portion of the property from the fraudulent vendee.

So, also, the receipt by the vendor from the vendee of compensation in any form or upon any basis for that portion of the goods which the latter has retained, will not affect the title to the residue or the action pending for

the conversion thereof. A settlement, therefore, with the vendee, of the action upon the contract of sale from which is expressly excluded that portion of the goods for the conversion of which the first action was brought, will not affect that action. So long as the settlement is confined to the portion of the goods retained by the vendee, it is immaterial to the defendant in the first action whether it is in the form of a payment as on a purchase or of compensation for a conversion. Nor is it material whether upon such settlement the vendor retains the original consideration received under the contract or whether other compensation is substituted. It is not a revival of the old contract, but a new one different from and embracing only a part of the subject of the former. (GROVER and ALLEN, JJ., dissenting.)

As against a third person claiming under a fraudulent vendee, in order to establish a rescission of the contract of sale, it is not necessary to prove a return of, or offer to return, any securities received thereon if the vendor refrains from asserting any title to those securities founded upon the original contract.

(Argued December 21, 1871; decided April 9, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department in favor of defendants entered upon a verdict. (Reported below 2 Lans., 492.)

The action was brought for the alleged wrongful conversion of ten barrels of spirits.

In December, 1867, the plaintiff sold and delivered to P. F. Gill & Co. seventy-seven barrels of spirits, amounting to $6,313.34, and at the time received and credited on the bill, as cash, two checks on a bank in Troy, signed by Nat. Wood, and payable to the order of P. F. Gill & Co., and indorsed P. F. Gill & Co.; one check for $2,964.10, and the other for $2,835.

James Gill (of the firm of P. F. Gill & Co.) made the purchase. He represented Wood to be a wealthy man, an officer, president or director of the Central National Bank of Troy, and one of the largest stockholders of the bank. The goods were sold to Gill, by plaintiff, in reliance upon these representations.

In fact these representations were false to the knowledge of Gill.

The checks were not paid. Ten barrels of the liquors sold to Gill were received by defendants.

As soon as plaintiff learned that the checks were worthless, and Gill's representations false, he telegraphed to defendants not to pay Gill for the ten barrels had by them and soon after demanded the goods of defendants, who refused to give them up.

This action was commenced July 16, 1868.

Plaintiff in October, 1868, commenced an action in the Superior Court of the city of New York, against P. F. Gill and James Gill, to recover for the liquors delivered Gill in December, 1867, as for goods sold and delivered. An agreement was made, June 2, 1869, for settling such action by plaintiff receiving from the Gills four promissory notes of $250 each, three of which were paid when this suit was tried, the fourth not then being due.

The plaintiff proved that it was agreed that the suit pending against defendant should not be included in the settlement, and that this exception was left out of the written agreement for a settlement by mistake.

The court ruled and held, that a settlement having been made for a portion of the goods subsequent to the commencement of this action, it could not be sustained, and directed a verdict for defendants, and plaintiff excepted.

The exceptions of plaintiff were ordered to be heard at General Term in the first instance, where judgment was ordered for the defendants.

*Samuel Hand* for appellant. If a vendor, who is entitled to rescind sale and retake possession of goods delivered, actually elects to do so, he disaffirms the sale, and cannot afterward sue for the price. (*Morris* v. *Rexford*, 18 N. Y., 552, 557.) The bringing of a suit subsequently to recover the price of the goods, could not affect the rights of the parties to his action. (*Morris* v. *Rexford*, *supra* ; *King* v. *Phillips*, 8 Bosw., 603, 611.)

The settlement of that case is no bar to this action.

Perhaps if the whole value of all the goods obtained had been paid, the plaintiff, having received all he was in any event entitled to, would be precluded from recovery here. But he received notes for only $1,000, while the amount of his purchase was $6,315.

A surrender of Wood's checks was not necessary to a valid rescission. (*Pease* v. *Pettis*, 47 Barb., 276; *Austin* v. *Stevens*, 1 Met., 557.)

*Amasa J. Parker* for the respondents. The commencement of this action merely without tendering back the unpaid checks or following the balance of the property was not a rescission. ( *Vorhees* v. *Earl*, 2 Hill, 288; *Wheaton* v. *Baker*, 14 Barb., 594; *Goeth* v. *White*, 35 id., 16; *Abbott* v. *Draper*, 4 Den., 51; *Stevens* v. *Hyde*, 32 Barb., 171; *Matteawan Co.* v. *Bentley*, 13 id., 641; *Masson* v. *Bovet*, 1 Den., 69; *Morse* v. *Brackett*, 98 Mass., 205, 207, 210; *Perley* v. *Balch*, 23 Pick., 283; *Sanborn* v. *Osgood*, 16 N. H., 112; *Love* v. *Oldham*, 22 Ind., 51; *Christy* v. *Cummins*, 3 M'Lean, 386; *Henckley* v. *Henderson*, 5 id., 170.) A vendor cannot rescind in part and affirm as to the residue. (*Matteawan Co.* v. *Bentley*, 13 Barb., 641.) The commencement of the suit to recover for the goods sold, followed by the settlement, was an abandonment of the claim for a tortious taking. (*Sanger* v. *Wood*, 3 J. Ch., 416; *McElroy* v. *Mancius*, 13 J., 121; *Butler* v. *Miller*, 1 Com., 496; *Morris* v. *Rexford*, 18 N. Y., 552, 557; *Colburn* v. *Woodworth*, 31 Barb., 381; 1 Wait, 511; *Lloyd* v. *Brewster*, 4 Paige, 537; *Bank of Beloit* v. *Beale*, 7 Bosw., 611; 34 N. Y., 473.) A demand cannot be split up so as to maintain two different actions. (*Fish* v. *Folley*, 6 Hill, 54; *Bendernagle* v. *Cocks*, 19 Wend., 207.) It is not material that the action in affirmance of the contract was commenced last. (*Morris* v. *Rexford*, 18 N. Y., 558.)

RAPALLO, J. Concurring in the conclusion of my learned associates, that at the time of the commencement of this action there had been a valid rescission of the contract of sale

to Gill & Co., and that the right of action of the plaintiff against the defendants for the conversion of the goods received by them from Gill & Co. was then perfect, I cannot concur in the further conclusion that the subsequent suit and settlement between the plaintiff and Gill & Co. necessarily constituted a bar to this action. So long as the contract of sale between the plaintiff and Gill & Co. remained voidable merely, it was capable of ratification by any act of the plaintiff evincing a clear intention to affirm it. And at that stage the bringing of an action by the plaintiff against Gill & Co., founded upon the contract, the plaintiff having acquired full knowledge of the fraud, would have been an unequivocal affirmation of the sale, binding upon the plaintiff, and effectual to preclude him from setting up his title to the goods against Gill & Co. or any of their vendees. But after the plaintiff had made a valid election to avoid the sale, and had asserted his title to the goods by bringing this action, the contract of sale was at an end. The fraud being established, neither Gill & Co. nor their vendees (other than *bona fide* purchasers) could claim any title under the sale, and the right of action of the plaintiff against Gill & Co. upon the contract was gone. No subsequent act of the plaintiff alone could revive the contract or the right of action thereon, which had thus been destroyed. (*Morris* v. *Rexford*, 18 N. Y., 552.) The rights of all the parties had become fixed, and were the same as though there never had been any contract of sale, but the goods had been tortiously obtained by Gill & Co. (5 T. R., 214; 1 Stra., 165.) The mere bringing of an action upon the original contract against Gill & Co., after such an avoidance of the sale, did not affect the rights of the defendants. Gill & Co. had a perfect defence to the action on the contract. (*Morris* v. *Rexford, supra.*) A recovery in that action against Gill & Co. might have had the effect of changing the title to the goods, as would a recovery in trover; but the simple institution of the action would not. It could not operate as an election which would debar the plaintiff from prosecuting his action for conver-

sion, because the right of election no longer existed at the time the action on contract was brought. The institution by a party of a fruitless action, which he has not the right to maintain, will not preclude him from asserting the rights he really possesses. In *Morris* v. *Rexford*, the judgment turned upon the point that, at the time of bringing the replevin suit, the plaintiff had the right to reclaim his goods, and that therefore he was bound by his election so to do, and could not, after such election, sue upon the contract of sale ; and it was expressly held in that case, that if, upon a second trial, it should appear that the plaintiff had not such right of election at the time of bringing the replevin suit, that suit would not interfere with his right of action on the contract.

It necessarily follows, from the principles laid down in *Morris* v. *Rexford*, that the mere bringing of the action on the original contract, after the contract had been annulled, could not affect the action for conversion.

After the contract of sale had been destroyed by the exercise of the plaintiff's right to avoid it, it was necessary, for the purpose of transferring to or vesting in Gill & Co. a title to the goods which would enure to the benefit of the vendees of Gill & Co., either that there should be a recovery by the plaintiff against Gill & Co., for the value of the goods, embracing those which had been passed to the defendants, or that some new contract should be made by the plaintiff with Gill & Co., embracing the same goods.

The receipt by the plaintiff, from Gill & Co., of compensation in any form or upon any basis for that part only of the goods which Gill & Co. had retained, would not affect the title to the residue, or the action then pending against the defendants for the conversion of such residue. The old contract was gone, and past ratification. The time for election had passed by. The doctrine that a ratification or affirmation of a contract in part operates as a ratification of the whole, was no longer applicable to the case. Whatever rights were acquired under the settlement of the action brought by the plaintiff against Gill & Co., subsequent to the commencement

of this action, sprang out of that settlement and not out of the original contract of sale, and were necessarily governed and limited by the terms of the settlement. The plaintiff was at perfect liberty, after the commencement of the present action, to make any settlement he could with Gill & Co., without affecting his existing right of action against the defendants, provided they excluded from their new arrangement the goods which had come to the hands of the defendants, and which are the subject of this action. If the settlement embraced those goods, the defendants could, of course, claim the benefit of it. But if it was confined to the other portion of the goods, it was immaterial to the defendants in what form the plaintiff obtained satisfaction from Gill & Co., whether in the form of a payment, as on a purchase, or of compensation for a conversion.

Neither was it material whether on the settlement with Gill & Co. they took back the checks given on the original purchase and substituted other compensation, or whether as part of the compensation they allowed the plaintiff to retain those checks. If the settlement was confined to the portion of the goods which Gill & Co. retained, it was not a revival of the old contract, but a new contract different from and embracing only a part of the subject of the original one. The application to such new contract of the checks formerly designed to apply on the first contract was in substance a restitution of those checks to Gill & Co. It was an application of them to the use of Gill & Co. with their consent, in discharge of a liability which the plaintiff could have enforced against Gill & Co. separately, without in any manner impairing his rights against the defendants in this action.

The controlling question upon which the plaintiff's right to maintain this action depended was, whether the settlement between the plaintiff and Gill & Co. in fact embraced all the goods which were included in the original purchase, or was restricted to that portion of them which had not been transferred to the defendants.

The plaintiff, it is true, brought an action against Gill &

Co. for the contract price of all the goods purchased, and the attorney for the plaintiff in that action received from Gill & Co. their four notes for $250 each, and gave them a written stipulation that on payment of those notes the action should be settled and discontinued; but that if either of the notes should not be paid when due, the action should proceed, and that the stipulation should not prejudice any claim of the plaintiff against Nat. Wood.

This settlement, if authorized, would, in the absence of explanation, be deemed to embrace the whole of the original purchase, which was the subject of the action settled. But evidence was given tending to show that by the actual agreement the property and matters involved in this action were excepted from their settlement, and that a provision to that effect was omitted from the stipulation through the mistake of the attorney. On the trial the judge was requested to submit that question to the jury, but refused, and decided that a settlement having been made and payment received for a portion of the goods, this action could not be sustained, and directed a verdict for the defendant on the ground that by the suit and settlement the plaintiff had affirmed and ratified the sale made to Gill in December, 1867.

According to the views before expressed, if the original contract had been rescinded before the suit against Gill & Co. was brought or settled, that suit and settlement did not affect the title to any property excepted from the settlement, and the ruling that payment by Gill & Co. for a portion of the goods was a bar to this action was not correct.

The court at General Term do not in their opinion sustain that ruling, but rest their decision affirming the judgment for the defendants upon the ground that there never was any valid rescission of the contract of sale, the plaintiff not having returned the Wood checks, and they cite the case of *Wheaton* v. *Baker* (14 Barb., 594), and other cases holding that, to entitle a vendor to rescind the contract of sale on the ground of fraud, and reclaim his goods, he must surrender what he has received under the contract.

The case of *Wheaton* v. *Baker* is more analogous to the present case than any of the others cited. There the action was trover, brought against the assignee of the fraudulent vendee for the recovery of the value of part only of the goods which had been obtained by the fraud. The vendor had received in part payment for the whole of the goods the notes of a third party, which he retained, and after the discovery of the fraud and the bringing of the action of trover, he obtained judgment against the maker of the notes. The material distinction between that case and the present is, that in that case the vendor appropriated and enforced securities obtained under the original contract of sale, without having made any new arrangement or settlement with his vendee by which those securities had been applied and devoted exclusively to the satisfaction of the claim of the vendor for a portion of the goods other than that which was the subject of the action of trover.

The enforcement of these securities by the vendor without any new arrangement with the vendee was inconsistent with the vendor's allegation of rescission. He had no title to them independent of the original contract of sale. They embraced in part the price of the same goods for which the action of trover was brought. By obtaining judgment upon them he precluded himself from obtaining a second judgment in trover for the same goods. By obtaining judgment upon securities to which he had no title except under the original contract of sale, he conclusively negatived his allegation that he had ever in fact rescinded the sale. If he had rescinded, the title to the securities had reverted to the fraudulent vendee from whom they were received; and although as against a third party claiming under the fraudulent vendee, according to the doctrine of *Stevens* v. *Austin* (1 Met., 558), and *Pearse* v. *Pettis* (47 Barb., 276), it was not necessary to prove an offer to return the securities to the original vendee, yet it was essential to a valid rescission that the vendor should refrain from the assertion of any title to those securities founded upon the original contract. In the present case

the plaintiff is not shown to have claimed to retain or enforce the checks of Wood under or by virtue of the original contract, but only under the subsequent settlement with Gill & Co., and, if the fact in respect to the subject embraced in that settlement was as claimed by the plaintiff, the agreement to retain the Wood checks in satisfaction of the claim against Gill & Co. for part of the goods was not inconsistent with a rescission of the original contract, and was in fact equivalent to a return of the checks to Gill & Co.

The suit which was agreed to be withdrawn as part of the settlement was inconsistent with the rescission, but that suit the plaintiff had no right to maintain, and by withdrawing it in consideration of a settlement which was consistent with a rescission, and which recognized the plaintiff's right to continue the prosecution of this action, the plaintiff cannot be held to have abandoned his rescission or to have reinstated the title of Gill & Co. to all the goods embraced in the original purchase. For these reasons I think there should be a new trial.

GROVER, J. (dissenting). The evidence given by the plaintiff showed that Gill & Co., by fraudulent representations, induced him to sell and deliver to them seventy-seven barrels of whisky, and receive in payment of the principal part of the purchase money checks upon a bank in Troy, drawn by Nat. Wood, which were, substantially, worthless, the residue remaining unpaid. That upon the discovery of the fraud the plaintiff at once commenced a search for the liquor and succeeded in tracing about thirty barrels in the hands of different persons; ten of which he found in the hands of the defendants, who claimed to have purchased the same of Gill & Co., but the evidence tended to show that they were not purchasers in good faith. The plaintiff demanded the liquor of the defendants, and upon their refusal to deliver the same commenced this action for the recovery of its value. Upon these facts the plaintiff's action was well brought, and his right of recovery for the liquor established. It was not necessary for

him to show that he had given notice to Gill & Co. of his intention to rescind the contract, or that he had tendered to them the checks of Wood. His right to seize the liquor in the hands of the defendants was perfect without the performance of these acts. (*Stevens* v. *Austin*, 1 Met., 557; *Nellis* v. *Bradley*, 1 Sand., Superior Court, 560; *Pearse* v. *Pettis*, 47 Barb., 276.) The act of the plaintiff in demanding the liquor in question of the defendants and prosecuting them for its conversion, would show his election to rescind the entire contract on account of the fraud practiced by Gill & Co. The plaintiff could not rescind as to the ten barrels in question, leaving the contract of sale valid as to the residue, but must rescind the entire contract *in toto*, if at all. (*Voorhees* v. *Earl*, 2 Hill, 288; *Wheaton* v. *Baker*, 14 Barb., 594; *Goelth* v. *White*, 35 Barb., 76.) An election to rescind, when distinctly made, cancels and puts an end to the contract *in toto*, and restores the vendor to his original title as owner of the property, and leaves the parties in their original position as to the title. (*Stevens* v. *Hyde*, 32 Barb., 171.) It follows that a rescission of the contract would constitute a bar to an action brought by the vendor against the purchaser upon the contract of sale for the recovery of the price of the goods. That contract is terminated by the rescission, and has no validity whatever thereafter. (*Morris* v. *Rexford*, 18 N. Y., 552.) Where the right of election exists and the party has once made his election he is concluded thereby, and can, thereafter, maintain no action inconsistent with the rights acquired by such election. (Id.) It follows that when the plaintiff exercised his right to rescind the contract on account of the fraud of Gill & Co. in the purchase, by asserting his title to the liquor in the hands of the defendant, he could not, thereafter, maintain an action against Gill & Co. upon the contract of sale for the recovery of the purchase price, although he could recover against them for the wrongful conversion of such quantity of the liquor as he had not obtained satisfaction for from third persons. This remedy would not have been inconsistent with the rescission of the

contract of sale, but in accordance with the rights of the plaintiff so acquired. When the plaintiff, after the commencement of the present action, commenced an action against Gill & Co., upon the contract of sale for the recovery of the price of the entire liquor sold, the latter might have set up the rescission of the contract as a defence to the action. (*Morris* v. *Rexford, supra.*) But this they did not do, but settled the action with the plaintiff by giving notes for a part of the purchase price, and by a further stipulation that they should retain the checks of Nat. Wood received upon the sale, with the right of collecting the same against him. The counsel for the appellant insists that this only settled the claim of the plaintiff against Gill & Co. for that part of the liquor sold which he was unable to find. But the action was for the purchase price of the entire liquor sold, based upon the contract of sale. The evidence conclusively proved that this action was settled, and not a claim for the conversion by Gill & Co. of any part of the liquor while the property of the plaintiff. Beside, the plaintiff under the agreement was to retain his right to the checks of Nat. Wood, received by him upon the sale of the property. What was this right? Title to the checks acquired under the contract of sale. Retaining this right was recognizing and acting upon the contract of sale as still subsisting and valid between the parties. It was competent for the parties to do this notwithstanding the suit against the defendant. This recognition and act by both vendor and purchaser made the contract valid and binding in respect of their rights. It gave to Gill & Co. a valid title, under the contract of sale, to all the liquor included in the purchase which they had not already disposed of. The plaintiff could not thereafter assert any title to such liquor on the ground of the rescission of the contract. This title was made valid under the original purchase from the time of the delivery to Gill & Co., and embraced not only such liquor as they had not sold, but all the liquor included in the purchase. It would scarcely be contended that, after this recognition by the plaintiff of the contract of sale as valid and subsisting, he

could have commenced an action and recovered therein for the conversion of any of the liquor upon the ground that he had not parted with the title. He had thereby incapacitated himself from claiming title upon the ground of rescission not only against Gill & Co. but as against all claiming title under them. But it is claimed by the counsel for the appellant that this difficulty was obviated by the proof given that it was not intended to settle for the liquor for which this action was brought against the defendants, and that the exclusion of this liquor from the writing was the result of a mistake. We have already seen that the plaintiff must rescind the contract *in toto*, or not at all. He could not claim title to the ten barrels of the defendants upon the ground of a rescission, and at the same time retain his right to prosecute Nat. Wood upon the checks, or the defendant upon the contract of sale. By doing the latter he precluded himself from doing the former. The fact that the settlement of the action against Gill & Co. was not to be deemed final until all the notes given to the plaintiff were paid does not affect the question. Gill & Co. had acquired the right to make it final, by payment. Three of the notes had matured and been paid. The last was not due at the time of the trial of this action at the circuit. This gave the plaintiff no right to reclaim any of the liquor as upon a rescission of the contract against Gill & Co. or any one else. The judge was right therefore in directing a verdict for the defendant, and the judgment of the General Term affirming the judgment entered thereon must be affirmed with costs.

For reversal, Church, Ch. J., Rapallo, Peckham and Folger, JJ. For affirmance, Grover and Allen, JJ.

Judgment reversed and new trial ordered; costs to abide event.