LUCAS E. SCHOONMAKER AND HIRAM SCHOON-
MAKER, JR., RESPONDENTS, *v.* HIRAM B. KELLY, ·
APPELLANT.

*Action of replevin to recover goods fraudulently obtained — right of the vendors to deduct, from the amount received for the property sold by him, the value of that portion of the property which could not be replevied and the depreciation in the value of the portion replevied — an assignee for the benefit of creditors cannot object to the failure of the plaintiffs to make a tender to the assignor.*

This action was brought against the assignee of one Dimmick to recover a quantity of goods and chattels sold by the plaintiffs to Dimmick, upon the ground that the property was obtained by fraud. The contract-price was $273.39, on which there was paid, at the time of the sale, $100, credit being given for the balance. The sale was made on October twenty-ninth, and the general assignment was made on November twenty-fifth following. The $100 paid by Dimmick on the purchase was not returned or tendered to Dimmick, nor to the defendant, prior to the commencement of the action, but on the trial there was tendered by the plaintiffs to the defendant twenty-six dollars and sixty-one cents, being the balance of the $100, after deducting the value of the goods disposed of before the replevy was made and the depreciation in value of the goods replevied.

*Held,* that the tender was sufficient. (LEARNED, P. J., dissenting.)

That the objection that no restoration, or tender of restoration, had been made to Dimmick, could not be raised by the defendant, who, as the assignee of the property for the benefit of Dimmick's creditors, was not a *bona fide* purchaser for value, and must be deemed to have taken the property with notice and knowledge of Dimmick's fraud in obtaining it.

APPEAL from a judgment in favor of the plaintiffs, entered at the Ulster Circuit upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

The action was brought to recover certain goods and chattels sold by the plaintiffs to one Dimmick, and by the latter transferred by a general assignment to the defendant. A portion only of the goods were replevied, and such portion had depreciated in value to the extent of thirty-five dollars and fifty-two cents. On the trial the plaintiff tendered to the defendant twenty-six dollars and sixty-one cents, the purchase-price paid less the value of the goods not replevied and the loss in value of those which had been replevied.

*John A. Scott,* for the appellant.

*J. Newton Fiero,* for the respondents.

BOCKES, J.:

The action was replevin for a quantity of goods and chattels, sold by the plaintiffs to one W. W. Dimmick, and by him transferred to the defendant, who claimed and held the same as assignee of Dimmick, under a preferential assignment by the latter to him made for the benefit of his, Dimmick's creditors.

The plaintiffs claimed that the property was obtained from them by Dimmick by fraud; and therefore they had the right to rescind the contract of sale, and have return of the goods.

The sale was made October 29, 1884, and was of property at the contract price of $273.39, on which there was paid at the time $100, and credit was given for the balance; whereupon the goods were delivered to Dimmick.   On the twenty-fifth of November, twenty-seven days thereafter, Dimmick made an assignment of his property for the benefit of his creditors, to the defendant, who took possession, which possession included the goods remaining undisposed of, so as aforesaid sold to Dimmick and replevied in this action.   The $100 paid down by Dimmick on the purchase, was not returned or tendered to the latter, nor to the defendant, prior to the commencement of the action; but on the trial there was tendered by the plaintiffs to the defendant, twenty-six dollars and sixty-one cents, being the balance of the $100, after deducting the value of the goods disposed of before the replevy was made, including the depreciation on the goods replevied.   The tender was not accepted.   The verdict of the jury was for the plaintiff; and judgment having been entered the defendant appealed.

There was evidence tending to establish the fact charged, that the property was obtained by Dimmick from the plaintiff by fraud— hence, that fact must be deemed settled in the plaintiffs' favor by the verdict; and it follows that the title to the goods remained in the plaintiffs at their election, notwithstanding the formal sale by the latter to Dimmick.   The plaintiffs had the right to repudiate and rescind the sale because of the fraud practised upon them; but they were bound to do so promptly on discovering the fraud, and also to restore, or offer to restore, whatever they had received of value on

the sale. Such is the general rule applicable to this class of cases.

Here there is no question but that the plaintiffs elected to rescind the fraudulent sale with all needful promptness, but it is insisted, and the point was saved on the trial to the defendant by an exception to the ruling of the court, that there was no return or offer to return the $100 paid to the plaintiffs on the sale before the commencement of the action. The answer to this objection is, that on the trial they offered a return of all they had received and held of value to them growing out of the sale, being, too, all that Dimmick or any other person had lost by reason of their act of rescission. This certainly, in equity and justice, should be held sufficient. The wrong-doer could in right claim nothing more, certainly, than to be made good; that is, to be restored to the same position, in point of value, which he held when he committed the fraud, and this should, too, be measured by his own conduct in the meantime, whereby his victim had suffered from his fraud. In other words, he could of right only claim restoration in a way, and to an extent to make him good, in view of his own conduct in the use and disposition of the property fraudulently obtained, from which use and disposition he had derived benefit. It seems that the case was put in this condition on the trial by the tender of the twenty-six dollars and sixty-one cents, and this, according to the doctrine of the case of *Pearse* v. *Pettis* (47 Barb., 276), was all that the law required by way of return in a case like the present. (See, also, *Ladd* v. *Moore,* 3 Sandf., 589.)

But a tender of restoration to the defendant in this case was not necessary to the plaintiff's right of recovery against him, and the objection that no restoration or tender of restoration had been made to Dimmick was not open to him as matter of defense. This was so determined in *Pearse* v. *Pettis,* above cited. The defendant was the assignee of the property for the benefit of Dimmick's creditors, hence was not a *bona fide* purchaser. In law he must be deemed to have taken the property with notice and knowledge of Dimmick's fraud in obtaining it. Thus, as laid down in the case cited, he cannot set up the defense that the plaintiffs from whom the property was fraudulently obtained had omitted to perform their duty and obligation to Dimmick, the original purchaser, by returning, or offering to return, the part of the purchase-money paid; that

he is in no condition to raise the question which could only arise in an action between the plaintiffs and Dimmick, the party to the original contract. This subject received a very careful and elaborate examination in *Pearse* v. *Pettis*, which case stands, in so far as we have knowledge, unquestioned. See, also, *Kinney* v. *Kiernan* (49 N. Y., on page 172), where this case is cited with approval, as is also *Stevens* v. *Austin* (1 Metc., 558). In this latter case the fraudulent purchaser had transferred the property to the defendant, with notice to the latter of the fraud, and the question considered was, whether the plaintiff was bound to tender back the note and money he had received before he could bring his action. The court said : " We think he was not. Not to the defendant; for the plaintiff had received nothing from him. Nor could the defendant raise the question. * * * It was *res inter alios*, with which the defendant had no concern."

Thus, according to the cases cited, the objection that there had been no restoration of the $100 received by the plaintiff on the sale, was not available to the defendant as matter of defense.

The demand and refusal averred in the complaint is not denied in the answer ; besides, this was well proved on the trial.

Some exceptions to rulings on questions of evidence were entered, but after an examination of them we think the record free from error in that regard.

In a case like the present, where fraud is charged, a very liberal rule of examination is admissible in the discretion of the court, and we find no exclusion of evidence against the defendant of which he can justly complain.

The judgment and order appealed from should be affirmed, with costs.


LANDON, J. :

The plaintiffs reclaimed from the general assignee of the fraudulent purchaser goods which they had sold him at the price of $235.52, but which the fraudulent purchaser had damaged to the extent of thirty-five dollars and fifty-two cents. It was stipulated that they were worth $200 when reclaimed. Plaintiffs tendered on the trial to the defendant, the general assignee, twenty-six dollars and sixty-one cents. If the defendant is to lose the amount of the deprecia-

tion the tender was enough; if the plaintiffs should lose it the tender was too small by the thirty-five dollars and fifty-two cents. Why should not the defendant, whose assignor fraudulently obtained the goods, sustain this depreciation in value? Suppose the goods had been fraudulently purchased for $200, defendant paying $100 upon their purchase-price, had sold none, had damaged them $100. Defendant is bankrupt, and plaintiff's only practicable remedy is replevin. If they must tender $100 in order to rescind they can only reclaim goods now worth $100, and thus lose all.

The law adapts its remedies to accomplish justice. Code of Civil Procedure (§ 1722) allows the plaintiff to recover, in actions of replevin, damages for the injury or depreciation of value of a chattel while in possession of defendant, but requires that the complaint shall set forth the facts. Thus the principle that the fraudulent purchaser ought to sustain such damages is recognized. Here, however, the plaintiffs did not seek an affirmative recovery for the depreciation, but sought to have the amount allowed in diminution of the sum to be tendered. The plaintiffs, as we judge from the complaint, did not know that the goods had been damaged. They found that out after they had taken possession of them. The defendant, as general assignee for the benefit of creditors, occupies no better position than his assignor.

The court adapted the recovery to the proofs, no one was misled and justice was done.

LEARNED, P. J. (dissenting)

One Dimmick bought boots and shoes of plaintiffs to the value of $273.39 and paid $100. Soon after he made a general assignment to defendant. Thereupon plaintiffs replevied what they could find of the goods (viz., $235.52 in value at the selling price) on the ground of fraud in the pretended purchase. The actual value of the goods replevied was stipulated at $200. Plaintiffs never returned the $100 to Dimmick or any one. On the trial they offered to pay defendant twenty six dollars and sixty-one cents — that is, the then value of the goods replevied, $200, and the money originally paid, $100, less the selling price of the whole goods, $273.39. Defendant refused to take the money. Plaintiff had a verdict for the goods.

The questions presented are, whether they could retake the goods without returning the money; whether they could return on the trial; whether they tendered enough. In the first place, it is said that the assignee of the fraudulent vendee cannot insist that the vendor should return what he had received, because the assignee was not the party to receive what was to be returned. (*Pearse* v. *Pettis*, 47 Barb., 276.) But that was not the case of a general assignee. Here the defendant is the general assignee of Dimmick — of all his property except what is exempt. Hence, if money was to be returned by the plaintiffs, the defendant was the person entitled to receive it. The $100 belonged to him if the plaintiffs were not entitled to it. This was, in fact, acknowledged by plaintiffs when they made a tender at the trial to the defendant.

The plaintiffs had three remedies: First. They could sue for the contract-price. Second. They could sue for the damages on the ground of the fraud. Third. They could rescind the contract and replevy. If they took the last (as they did), then the rights of all the parties " were the same as though there never had been any contract of sale, but the goods had been tortiously obtained." (*Kinney* v. *Kiernan*, 49 N. Y., 164, at page 168; *Morris* v. *Rexford*, 18 N. Y., 552, at page 557.) For this reason it has been repeatedly said that the party who would rescind, must return all that has been received. (*Baird* v. *Mayor*, 96 N. Y., 567, at page 599, and cases there cited; see, also, *Bowen* v. *Mandeville*, 95 N. Y., 237, at page 240.) There it is said : " He may rescind the contract, and after restoring to the other party whatever may have been received thereon, sue for and recover back the entire consideration paid by him ; or, he may retain what he has received and sue for and recover such damages as he can establish have been sustained by the fraud. But these remedies being inconsistent, cannot both be prosecuted and maintained." (See, also, *Floyd* v. *Brewster*, 4 Paige, 537.)

Again it is said in *Guckenheimer* v. *Angevine* (87 N. Y., 394, p. 396): " The rule that a party undertaking to rescind a contract for fraud must restore to the other party what he has received under it is firmly established by authority. The person defrauded cannot at the same time avoid the contract and retain *anything* received by virtue of it, of value either to himself or to the party who committed the fraud."

It is thought that the case of *Ladd* v. *Moore* (3 Sandf., 589) asserted a different doctrine. That was an action for damages for trover. Plaintiff had been induced by defendant's fraud to sell him $480 of goods, taking $200 in cash and a note. On the trial, plaintiff surrendered the note, and recovered as damages the difference between $200 and $480, with interest. This was not an action of replevin, but to recover damages. The principal point discussed is whether a tender should have been made before trial. The money paid was allowed in reduction of the damages.

In *Pearse* v. *Pettis* (47 Barb., 276), an action to recover property, it was stated that where there had been a purchase by fraud, and the purchaser had paid $300 on the purchase-price, and the purchaser had made as much as that sum by the use of the property, the vendor was under no obligation to restore anything. But the question was not really involved, because it was held that the defendant, not being the original vendee, was not entitled to receive back anything. It seems to me that that case is hardly consistent with the later cases in the Court of Appeals, above cited, so far as it holds that there is no need to restore to the vendee.

Now to apply the principles held by the Court of Appeals, the most favorable view to plaintiffs is to consider the goods purchased as separable. Then Dimmick bought and paid for $100 worth of goods, and defrauded plaintiffs out of goods worth $173.39. They have replevied, therefore, goods which sold for $62.13, to which they were not entitled, and they offered to pay defendant for these, $26.61. If the goods sold for $235.52 have depreciated to $200, that is plaintiffs' loss, since they assert that the goods have always been theirs. Kelly has caused no damage to the goods, and is not liable for damage. None is alleged. (Code, 1722.)

In another view, plaintiffs have retaken $235.52 out of the $273.39 in value which they sold. All, therefore, which they could lawfully retain out of the $100 received is the difference between $235.52 and $273.39, or $37.87. They should at least have paid the defendant $62.13. As the case now stands, the plaintiffs have all the goods they ever had, except some which they sold for $37.87, and they also have $100 which Dimmick paid them. So they have $62.13 for nothing.

The fact is that this offer of plaintiffs on the trial, and the verdict thereon, is really an affirmance of the contract of sale. This sum is computed upon the basis that plaintiffs sold goods to the value of $273.39, for which Dimmick still owes them, and that they have received therefor in goods $200, and in cash $100, leaving balance due Dimmick's assignee $26.61. So that in this action the plaintiffs rescind the sale in order to replevy, and affirm it in order to retain their money. Thus the principle is overlooked that "the rights of the parties were the same as if there never had been any contract of sale." (*Kinney* v. *Kiernan, ut supra.*)

The rights of the parties have been adjusted as if there had been a valid contract, and not as if "the goods had been tortiously obtained." If the goods were tortiously obtained then there is no consideration for plaintiffs to retain the $100, if the sale is treated as a whole. If it is treated as separable, so that they can affirm it as to goods which they cannot find $37 87 in value, then they should restore $62.13.

Judgment affirmed, with costs.